**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**       FILED

C. A. NO.  303 CV 0577 MRK
2005 JAN -4  A  11: 29

U.S. DISTRICT COURT
NEW HAVEN, CT

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY and | ) |
| ALLSTATE INDEMNITY COMPANY, | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| ARTHUR M. SEIGEL, M.D., | ) |
| ARTHUR M. SEIGEL, M.D., P.C., | ) |
| and ELLEN SEIGEL, | ) |
|     Defendants. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
## FOR PARTIAL SUMMARY JUDGMENT AGAINST ARTHUR M. SEIGEL, M.D.

Allstate Insurance Company and Allstate Indemnity Company (hereinafter collectively referred to as "Allstate") respectfully request pursuant to Fed. R. Civ. P. 56, that partial summary judgment for liability enter against Defendant Arthur M. Seigel, M.D. (hereinafter "Dr. Seigel") in connection with Counts I, IV, V and VI of plaintiffs' Complaint. The undisputed facts are set forth in Allstate's Local Rule 56(a)1 Statement (hereinafter "Rule 56(a)1 Statement") filed together herewith.

## I.        INTRODUCTION

This case is brought pursuant to Title 18 U.S.C. §1962, Racketeer Influenced and Corrupt Organizations Act; Conn. Gen. Stat. § 42-110b, Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 53-442, Connecticut Health Insurance Fraud Act, and common law fraud. By its Complaint, Allstate alleges, among other things, that Dr. Seigel defrauded Allstate through a pattern of racketeering activity.

Dr. Seigel, through his professional corporation, Arthur M. Seigel, M.D., P.C. (hereinafter "Seigel, P.C.") defrauded Allstate by creating and submitting fraudulent

medical documentation through the U.S. Mail in connection with motor vehicle insurance claims. Rule 56(a)1 Statement at ¶¶11-13, 16, 18.

Seigel created and presented false medical documentation upon which Allstate relied seeking payment for medical services that were not performed. Rule 56(a)1 Statement at ¶¶11-13, 16-18, 21-24. Allstate sustained injury as a result of Dr. Seigel's fraudulent medical billing practices. Rule 56(a)1 Statement at ¶25. Allstate concedes that material issues of fact remain regarding damages and seeks summary judgment on liability only against Dr. Seigel.

Following detection of his fraudulent medical billing practices, Dr. Seigel was charged with mail fraud in violation of 18 U.S.C. §1341. Id. at ¶¶18-20. Dr. Seigel confessed and agreed to a plea bargain. Pursuant to his guilty plea, Dr. Seigel acknowledged that he knowingly and with intent to defraud, submitted bills to insurance companies for Needle EMG procedures that were never performed. Id. Dr. Seigel's admitted objective was to cause insurers to pay him money to which he was not entitled. Id.

Allstate now moves for partial summary judgment on liablity against Dr. Seigel only in connection with Counts I, IV, V and VI of the Complaint. As fully discussed below, the facts are undisputed that Seigel has admitted to conduct sufficient for this Court to enter judgment on liablity against Arthur M. Seigel, M.D. in connection with Counts I, IV, V and VI of Allstate's Complaint.

## II.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to

2

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and identifying which materials "it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

All inferences are to be drawn from the underlying facts in the light most favorable to the party opposing the summary judgment motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).

The mere existence of some peripheral factual disputes will not defeat an otherwise properly supported motion for summary judgment. Anderson, 477 U.S. at 247. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

Partial summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); see also Fed. R. Civ. P. 56(d) (allowing parties to move for an order specifying the facts that appear without controversy even when that order would not fully adjudicate the case).

3

### III.    LEGAL ANALYSIS

#### A.    Seigel Violated The Federal Rico Statute and is Liable on Count I of Allstate's Complaint

There are no genuine issues as to any material fact and Allstate is entitled to partial summary judgment on liability for Dr. Seigel's violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act.

Section 1964 of Title 18 of the United States Code provides a civil remedy for any "person" injured in his "business or property" "by reason of" a defendant's violation of §1962. Section 1962(c) prohibits the conduct or participation in the conduct of such an enterprise's affairs "through a pattern of racketeering activity." "Racketeering activity," as defined in 18 U.S.C. §1961(1), includes acts indictable under the Federal Mail and Wire Fraud Acts, 18 U.S.C. §§1341, 1343.

To state a civil claim for damages under RICO, a plaintiff has two pleading burdens. First, plaintiff must establish: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' or participates in (5) an 'enterprise' (6) the activities of which affect interstate or foreign commerce." Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983). Second, a plaintiff must allege "causation," (i.e., that he or she was injured in his or her business or property by reason of a violation of §1962). Id.

#### (1)    Enterprise – Seigel, P.C.

Seigel, P.C. is a business entity organized under applicable state and federal law to conduct the business of providing medical services as regulated by Connecticut law. Rule 56(a)1 Statement at ¶4. Seigel, M.D. is further subject to licensing requirements

4

under Connecticut law. Seigel, P.C., is an enterprise which affects interstate commerce for purposes of RICO.[1]

(2)    Racketeering Activity – Mail Fraud

The federal mail fraud statute prohibits use of the mails for the purpose of executing a "scheme or artifice to defraud, or for obtaining money or property by means of false and fraudulent pretenses." 18 U.S.C. §1341. To meet its burden, Allstate must simply demonstrate that (1) Dr. Seigel engaged in a scheme to defraud; (2) Dr. Seigel or someone associated with the scheme employed the use of the mails; and (3) the use of the mails was in furtherance of the fraudulent scheme. See, e.g., S.Q.K.F.C., Inc. v. Bell Atlantic Tricon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996); Porcelli v. U.S., 2002 U.S. App. LEXIS 18776 (2d Cir. Sept., 13 2002). Importantly, a plaintiff need not prove that each defendant personally employed use of the mails, but only that the defendant acted with the knowledge that the mails would be used in the ordinary course of business or acted in certain circumstances where such use of the mails can be reasonably foreseen. See Schmuck v. United States, 489 U.S. 705, 711-715 (1989); see also Aetna Cas. Sur. Co. v. P&B Autobody, 43 F.3d 1546, 1560 (1st Cir. 1994) (civil RICO claims arising from first and third party fraudulent insurance payments made in reliance upon false auto repair invoices). A plaintiff need not show that the defendant personally placed the communication into the postal system as the aim of the mail fraud statute is to punish the scheme to defraud, rather than the end result. Schmuck, 489 U.S. at 711-15.

---

[1] For purpose of pleading RICO, Seigel, P.C., is separate and distinct from the RICO defendant Arthur M. Seigel, M.D. See e.g. Riverwoods Chappaqua Corp. v. Marine Midland Bank, 30 F.3d 339 (2d Cir. 1994); U.S. v. Benny, 786 F.2d 410 (9th Cir. 1986); McCullough v. Suter, 757 F.2d 142 (7th Cir. 1985).

A person has caused the mail to be used within the meaning of the statute when he "acts with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended." Pereira v. United States, 347 U.S. 1, 8-9 (1954).

Dr. Seigel engaged in a pattern of racketeering activity comprised of the predicate act of mail fraud. 18 U.S.C. §1961(1)(B). Dr. Seigel has acknowledged that within the last ten years he mailed at least two pieces of false medical documentation regarding Allstate claimants through the U.S. Mail. Rule 56(a)1 Statement at ¶¶16-18; see 18 U.S.C. §1961(5). Dr. Seigel has confessed his repeated practice of presenting numerous fraudulent medical bills in connection with insurance claims. Rule 56(a)1 Statement at ¶¶16-20. See, e.g., H.J., Inc. v. Northwestern Bell Telephone Co., 492 US 229 (1989) (explaining that RICO's pattern requirement is comprised of the overlapping elements of continuity and relatedness).

Moreover, Seigel violated the mail fraud statute by causing medical documentation to be transmitted by way of the U.S. Mail. Id. at ¶17. In connection with his guilty plea, Dr. Seigel confessed to having employed the use of the U.S. Mail to submit false medical bills for Needle EMG testing that was not performed. Rule 56(a)1 Statement at ¶¶13-14, 18-20. Dr. Seigel confessed that in connection with "many" of the 7,000 Needle EMG bills issued during 1996 through 2000, the tests for which he sought payment were not performed. Id. Allstate has repeatedly requested that Dr. Seigel identify those tests in connection with Allstate insureds and Allstate claimants that were billed but never performed. Dr. Seigel has been unable to or unwilling to provide this information. Id. at ¶15.

Allstate has identified dozens of former Seigel patients/Allstate claimants who did not receive Needle EMG testing despite Dr. Seigel's representations and demands for payment for such testing. Id. at ¶21. In connection with each of these former patients/claimants, Allstate received Dr. Seigel's false invoices and treatment records via the U.S. Mail. Id. at ¶22. Clearly, Seigel acted with knowledge that the use of the mails would follow in the ordinary course of business, i.e., that a claimant or claimant's attorney would submit Dr. Seigel's invoices and treatment records to Allstate via the U.S. Mail for payment and/or in support of a claim for personal injury. Id. at ¶17; see, e.g., Aetna v. P&B Autobody, 34 F.3d 1546 (1st Cir. 1994)

(3)     Pattern

18 U.S.C. §1961(5) provides that a plaintiff is required to show the defendant engaged in "at least two acts of racketeering activity … which occurred within ten years." In assessing whether a plaintiff has met its burden of proving pattern under RICO, a court must examine the predicate acts alleged to determine (1) whether the acts are related; and (2) whether they either show continuity or pose a threat of continuity. Chubb & Son, Inc., 1998 U.S. Dist. LEXIS 22542, at *24. Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or are otherwise inter-related by distinguishing characteristics and are not isolated events." Id. at *25. "The Second Circuit, in turn, has directed the 'relatedness' of predicate acts may be evidenced by their temporal proximity, repetition, common goal and similar methodology." Id.

The continuity requirement under RICO can be either (or both) closed-end and/or open-ended. H.J., Inc., 492 U.S. at 241. Closed-end continuity is established upon proof

7

of repeated predicate acts over a "substantial" period of time, i.e., some period of time exceeding weeks or months. Id. at 242. In addition, the following factors should also be considered: (1) the number and variety of acts; (2) the number of participants; (3) the number of victims; and (4) the presence of separate schemes. GICC Capitol Corp. v. Technology Financial Group, Inc., 67 F.3d 463, 467 (2d Cir. 1995). Open-ended continuity, is demonstrated by predicate acts that present a threat of repetition. Id. at 241.

Allstate's evidence easily meets the test for continuity. Seigel repeatedly engaged in the same or similar conduct. Dr. Seigel's treatment of automobile accident patients followed a distinct pattern of treatment wherein each patient received a needle EMG test. Rule 56(a)1 Statement at ¶6. Dr. Seigel, through Seigel, P.C. intentionally engaged in a scheme to defraud insurance carriers. Id. at ¶11. Dr. Seigel has admitted such conduct both in connection with this criminal case as well as the instant matter. Dr. Seigel intentionally did not perform many needle EMG procedures for which bills were presented to Allstate during the period alleged in its Complaint (1996 through 2001). Id. at ¶¶13, 17, 21-22. It was routine business practice for Seigel, P.C. to issue medical records and invoices through the U.S. Mail with knowledge that such medical documentation would be relied on by others. Id. at ¶17. There can be no reasonable debate that Dr. Seigel has admitted to the essential elements necessary to establish a pattern of mail fraud in connection with the conduct alleged in this case.

(4)    Dr. Seigel Participated In The Enterprise's Affairs

For liability to attach, the RICO statute requires a showing that the racketeer (Seigel) must "participate, directly or indirectly, in the conduct of such enterprise's affairs." 18 U.S.C. §1962(c). The Supreme Court has held that "to conduct or

8

participate, directly or indirectly, in the conduct of [an] enterprise's affairs, one must participate in the operation or management of the enterprise itself." Reves v. Ernst & Young, 507 U.S. 170, 185 (1993). An enterprise is operated or managed by upper management, "lower participants in the enterprise who are under the direction of upper management" and even other outsiders associated with the enterprise "who exert control over it, as for example, by bribery." Id. at 184; see also Aetna v. P&B Autobody, 43 F.3d at 1559 (recognizing that appraising, investigating, processing, and paying automobile insurance claims are a vital part of an insurer's business and by acting with purpose to cause an insurer to make payments on false claims, the racketeer was participating in the operation of the insurer).

Undoubtedly, Dr. Seigel controlled the Seigel, P.C. enterprise. Rule 56(a)1 Statement at ¶¶3, 5. Dr. Seigel was a medical doctor, board certified in neurology and licensed to practice in Connecticut. Id. at ¶2. He was the principal shareholder of Seigel, P.C. Id. at ¶¶3-5. The only other shareholder of Seigel, P.C. was his wife, Ellen Seigel. Id. at ¶5. Seigel, P.C. was at all times a professional corporation operating medical clinic in New Haven and Wallingford Connecticut. Id. at ¶4.

The acts of falsifying medical bills and records in connection with insurance claims and transmitting the false documents, claims information and other misrepresentations by way of the U.S. Mail, demonstrates that Seigel participated in the conduct of Seigel, P.C. Therefore, Allstate has satisfied this prong of the RICO test.

9

(5)    RICO Damages

Allstate has been harmed by Dr. Seigel's fraudulent conduct. Rule 56(a)1

Statement at ¶24.  Notwithstanding, Allstate concedes that a trial is necessary on the issue

of damages to determine the amount to which Allstate is entitled.

As demonstrated in Allstate's Rule 56(a)1 Statement, with respect to the narrow

partial summary judgment sought by the instant motion, it has been established beyond

dispute that Dr. Seigel violated 18 U.SC. §1962 and Allstate sustained injury as a direct

and proximate result of Dr. Seigel's illegal conduct.  Accordingly, Allstate is entitled to

partial summary judgment.

B.    Dr. Seigel Violated the Connecticut Unfair Trade Practices Act and Is Liable
      on Count V of Allstate's Complaint.

There are no genuine issues as to any material fact and Allstate is entitled to

partial summary judgment on liability for Dr. Seigel's violations of the Connecticut

Unfair Trade Practices Act.

Conn. Gen. Stat. § 42-110b(a) provides that "no person shall engage in unfair

methods of competition and unfair or deceptive acts or practices in the conduct of any

trade or commerce." "A party seeking to recover damages under CUTPA must meet two

threshold requirements.  First, a plaintiff must establish that the conduct at issue

constitutes an unfair or deceptive practice. ... Second, a plaintiff must present evidence

providing the Court with a basis for a reasonable estimate of the damages suffered."

Rizzo Pool Co. v. Del Grosso, 232 Conn. 666, 684 n. 28 (1995); A. Secondino & Son,

Inc. v. LoRicco, 215 Conn. 336, 343 (1990).

The following are factors considered in determining whether an action or practice

is unfair:

10

(1)     Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, statutory, or other established concept of unfairness;

(2)     Whether it is immoral, unethical, oppressive or unscrupulous;

(3)     Whether it causes substantial injury to consumers.

White v. O'Rourke, 1990 Conn. Super. LEXIS 783, *5 (July 18, 1999).

A plaintiff establishes a CUTPA violation by showing either an actual or deceptive practice or a practice amounting to a violation of public policy. Id. "All three criteria need not be satisfied to support a finding of unfairness; a practice may be unfair because of the degree to which it meets one of the criteria or because, to a lesser degree, it meets all three." Id.

Dr. Seigel's confessed, undisputed conduct of creating false medical documentation and presenting such documentation through the U.S. Mail to obtain payment for services (Needle EMG tests) that he did not perform constitutes unfair and deceptive trade practices. Rule 56(a)1 Statement ¶¶11-14, 16, 18-23. Therefore, for purposes of this limited motion, Allstate respectfully requests that partial summary judgment enter against Dr. Seigel on Count V of Allstate's Complaint.[2]

C.      Dr. Seigel Violated the Connecticut Health Insurance Fraud Act ("CHIFA") and Is Liable on Count VI of Allstate's Complaint

There are no genuine issues as to any material fact and Allstate is entitled to partial summary judgment on liability for Dr. Seigel's violations of the Connecticut Health Insurance Fraud Act ("CHIFA").

11

The Connecticut Health Insurance Fraud Act (hereinafter "CHIFA") provides a private right of action to Allstate to recover against Dr. Seigel for "all damages resulting from [his] fraud." See Thal v. Berkshire Life Ins. Co., 1999 U.S. Dist. LEXIS 4891, *9 (D. Conn. 1999). "A person is guilty of health insurance fraud when he, with the intent to defraud or deceive any insurer . . . presents or causes to be presented to any insurer or any agency thereof, any written or oral statements as part of or in support of a . . . claim for payment . . . knowing that such statement contains any false, incomplete, deceptive or misleading information concerning any facts or thing material to such claim." Conn. Gen. Stat. § 53-442. CHIFA provides for recovery by a successful plaintiff of "all damages" for violations of this statute.

For purposes of the instant motion, Dr. Seigel violated CHIFA by creating and presenting false invoices and medical reports knowing that they contain false, deceptive and misleading information with the intent to defraud Allstate and causing Allstate to pay medical bills and personal injury adjudications and settlements. Rule 56(a)1 Statement at ¶11-14, 16, 18-23. With respect to liability only, Allstate has demonstrated an absence of any genuine issue of material fact and, therefore, is entitled to partial summary judgment on liability in connection with its CHIFA claim in Count VI.

D.    Dr. Seigel Committed Common Law Fraud and is Liable on Count IV of Allstate's Complaint

Under Connecticut law, to establish a claim of fraud, plaintiff must establish that the defendant intentionally advanced a misrepresentation of material fact about which the plaintiff reasonably relied to its detriment. See Chanoff v. U.S. Surgical Corp., 857 F. Supp. 1011, 1017 (D. Conn. 1984); Billington v. Billington, 220 Conn. 212, 217 (1991).

---

[2] Allstate does not seek partial summary judgment against Ellen Seigel.

12

The undisputed facts, set forth in Allstate's Rule 56(a)1 Statement demonstrate that there is no dispute that Dr. Seigel intentionally misrepresented facts regarding the performance of medical testing with the intent that insurance companies, including Allstate, rely upon such misrepresentations to pay medical bills and settle automobile accident claims. Allstate reasonably relied to its detriment upon such misrepresentations in paying medical bills and evaluating injury claims. Rule 56(a)1 Statement at ¶23. While the damage to which Allstate is entitled has not been established with certainty, the fact that Dr. Seigel defrauded Allstate has been established and is beyond dispute. Accordingly, Allstate is entitled to an entry of judgment in its favor on liability of Dr. Seigel's fraudulent conduct under Connecticut law.

## IV.   **CONCLUSION**

There are no genuine issues of material fact in dispute regarding Arthur M. Seigel, M.D.'s liability for violating the federal RICO statute, CUTPA, CHIFA and Connecticut's common law fraud, as described above. Accordingly, partial summary judgment should enter in favor of Allstate. Respectfully, a proposed Order is filed together herewith.

13

Respectfully Submitted,
Plaintiffs,
*Allstate Insurance Company and*
*Allstate Indemnity Company,*
By their Attorneys,


David O. Brink
Federal Bar No. CT23989
Richard D. King, Jr.
Federal Bar No. CT23997
Nathan A. Tilden
Federal Bar No. CT24011
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, MA  02171
Tel.  (617) 770-2214

14

I, Richard D. King, Jr., attorney for the plaintiffs, hereby certify that I mailed, via expedited delivery (2nd day Air), postage prepaid a copy of the documents listed below to:

Ira B. Grudberg, Esq.
David L. Belt, Esq.
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange Street
P.O. Box 606
New Haven, CT  06503-0606

1. Plaintiffs' Motion For Partial Summary Judgment Against
   Arthur M. Seigel, M.D.;
2. Local Rule 56(a)1 Statement;
3. Memorandum Of Law In Support Of Plaintiffs' Motion
   For Partial Summary Judgment Against Arthur M. Seigel, M.D.;
4. Affidavit Of Michael Bruno In Support Of Plaintiffs' Motion For
   Partial Summary Judgment Against Arthur M. Seigel, M.D.; and
5. [Proposed] Judgment.

_____
Richard D. King, Jr.

Dated:  January 3, 2005