UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

FILED
2005 JAN -3 A 11:30
U.S. DISTRICT COURT
NEW HAVEN, CT

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY and<br>ALLSTATE INDEMNITY COMPANY<br>　Plaintiffs,<br><br>v.<br><br>ARTHUR M. SEIGEL, M.D.,<br>ARTHUR M. SEIGEL, M.D., P.C.,<br>and ELLEN SEIGEL,<br>　Defendants. | C. A. NO. 3:03 CV 0577 MRK |

## LOCAL RULE 56(a)1 STATEMENT

**I.   INTRODUCTION**

　　1.　　At all relevant times, Allstate Insurance Company and Allstate Indemnity Company (hereinafter collectively referred to as "Allstate") were insurers duly authorized to carry on the business of insurance, in the State of Connecticut. Affidavit Of Michael Bruno In Support Of Plaintiffs' Motion For Partial Summary Judgment Against Arthur M. Seigel, M.D. (hereinafter "Bruno Affidavit, ¶ ___") ¶¶5-6, annexed hereto at A.

　　2.　　At all relevant times, Dr. Seigel was a medical doctor, board certified in neurology and licensed to practice in Connecticut. Arthur M. Seigel, M.D. Responses to Allstate's Requests for Admissions (hereinafter "Dr. Seigel Admission, No. ___") Nos. 1-10, annexed hereto at B.

　　3.　　Dr. Seigel is the principal of defendant, Arthur M. Seigel, P.C. (hereinafter "Seigel, P.C."). Dr. Seigel Admission, No. 5.

4.      At all relevant times, Seigel, P.C. was a professional corporation operating offices and/or medical clinics located in New Haven and Wallingford, Connecticut. Dr. Seigel Admission, Nos. 5-10.

5.      Arthur M. Seigel, M.D. and Ellen Seigel were, at all relevant times, the sole shareholders of Seigel, P.C. Dr. Seigel Admission, Nos. 5-10.

6.      Seigel, P.C. employed approximately 5-8 employees during the period described in Allstate's Complaint. Dr. Seigel Admission, Nos. 5-10.

7.      Dr. Seigel's treatment of automobile accident patients followed a distinct pattern - - most every patient received at least one (1) needle electromyography (hereinafter "Needle EMG test"). Bruno Affidavit, ¶8.

8.      Dr. Seigel was trained in the performance of Needle EMG testing. Dr. Seigel Admission, No. 13.

9.      Needle EMG testing requires the use of needles. Dr. Seigel Admission, No. 14.

10.     Needle EMG testing is an invasive procedure that requires the subcutaneous insertion of a needle into one or more muscles. Dr. Seigel Admission, No. 14.

11.     Dr. Seigel, through Seigel, P.C. intentionally engaged in a scheme to defraud insurance carriers. Dr. Seigel Admission, Nos. 17-21, 38, 44, 56.

12.     The objective of Dr. Seigel's fraudulent scheme was to obtain money by causing insurers, including Allstate, to pay, directly or indirectly, for medical treatment that was never performed or performed incompletely. Arthur M. Seigel, M.D. Answers to Interrogatories (hereinafter "Dr. Seigel Int. Ans. No. ___") No. 1(f), annexed hereto at C.

13. Dr. Seigel intentionally did not perform many of the Needle EMG procedures for which he submitted bills to insurance companies from December 1996 through August 2000. Dr. Seigel Admission, No. 18; Executed Plea Agreement Letter and Executed Stipulation of Offense Conduct, a certified copy of which is annexed hereto at D and incorporate herein as if set forth in its entirety.

14. Of the approximately 7,000 Needle EMG procedures in connection with which Dr. Seigel billed insurers during December 1996 through August 2000, Dr. Seigel intentionally billed insurers (including Allstate) falsely for tests that were not performed. Dr. Seigel Admission, Nos. 17, 19-20.

15. Dr. Seigel cannot identify in which files he created false medical documentation regarding needle EMG testing in connection with Allstate insureds and/or Allstate claimants. Dr. Seigel Admission, No. 44.

16. Dr. Seigel mailed at least two (2) pieces of false medical documentation regarding Allstate claimants through the U.S. Mail within the last ten (10) years. Dr. Seigel Admission, No. 28. Dr. Seigel Int. Ans. No. 1(f).

17. It was routine business practice for Seigel, P.C. to issue medical records and medical invoices demanding payment for and referencing Needle EMG testing through the U.S. Mail with knowledge that such medical documentation would be relied on by others. Response of Ellen Seigel to Plaintiff, Allstate Insurance Company's First Request for Admissions to the Defendant, Ellen Seigel (hereinafter "Ellen Seigel Admission No. ___") No. 17, annexed hereto at E; Excerpt of Deposition of Arthur M. Seigel, M.D. dated October 22, 2004 (hereinafter "AMS Depo., at "___") page 146-147, annexed hereto at F.

3

18. Dr. Seigel created and submitted false and fraudulent documentation including false medical billing invoices and reports and intentionally violated the laws of the United States by, devising and intending to devise schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by causing to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. §1341 (mail fraud) for the purpose of executing such fraudulent schemes and attempting to do so. Stipulation of Offense Conduct; Plea Agreement Letter; Dr. Seigel Int. Ans. No. 10(e).

19. Dr. Seigel pled guilty in connection with charges that he engaged in a scheme to defraud insurance carriers, by intentionally billing for Needle EMG tests that Seigel did not perform. Stipulation of Offense Conduct; Dr. Seigel Int. Ans. No. 10(e).

20. In connection with the criminal charges brought by the U.S. Attorney's Office for the District of Connecticut, Dr. Seigel confessed that "many" of the 7,000 Needle EMG tests for which he billed and collected payment from insurers were <u>not</u> performed. Plea Agreement Letter; Stipulation of Offense Conduct; Judgment in <u>U.S. v. Arthur M. Seigel</u> (Case No. 3:01CR274), a certified copy of which is annexed hereto at G and incorporated herein by reference as if set forth in its entirely.

21. As detailed in Allstate's Complaint, many of Dr. Seigel's former patients have reported that they did not receive Needle EMG testing from Dr. Seigel despite the submission of an invoice demanding payment for such tests. Bruno Affidavit ¶9.

22.  In connection with each of the affiants referenced in ¶22, Allstate received Seigel invoices and the other claim-related documentation demanding payment for and referencing Needle EMG tests through the U.S. Mail. Bruno Affidavit, ¶10.

23.  In connection with each of the claims alleged in its Complaint, Allstate's ultimate payment was made in reasonable reliance upon the false and fraudulent documentation and representations submitted by Dr. Seigel, through Seigel, P.C. Bruno Affidavit at ¶11.

24.  Allstate sustained damage to its business and property as a result of the wrongful conduct of defendant, Arthur M. Seigel, M.D. Bruno Affidavit at ¶13.

Respectfully Submitted,
Plaintiffs,
*Allstate Insurance Company and Allstate Indemnity Company,*
By their Attorneys,

_____
David O. Brink
Federal Bar No. CT23989
Richard D. King, Jr.
Federal Bar No. CT23997
Nathan A. Tilden
Federal Bar No. CT24011
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, MA 02171
Tel. (617) 770-2214
