UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

C. A. NO. 303 CV 0577 MRK

ALLSTATE INSURANCE COMPANY and )
ALLSTATE INDEMNITY COMPANY )
    Plaintiffs, )
)
v. )
)
ARTHUR M. SEIGEL, M.D., )
ARTHUR M. SEIGEL, M.D., P.C., )
and ELLEN SEIGEL, )
    Defendants. )

## PLAINTIFFS' REPLY BRIEF

The plaintiffs, Allstate Insurance Company and Allstate Indemnity Company (hereinafter collectively "Allstate") submit the within reply brief pursuant to Local Rules 7(b) and 56.

**I.    ENTRY OF SUMMARY JUDGMENT ON LIABILITY IS PROPER**

    A.    <u>The Record Evidence Supports Entry Of Judgment In Favor Of Allstate Against Arthur M. Seigel For Liability On Counts I, IV, V And VI</u>

Allstate moves that judgment enter against Arthur Seigel (hereinafter "Seigel") for liability only on Counts I, IV, V and VI of Allstate's Complaint. The papers submitted in support Allstate's motion, as well as defendant's submissions, demonstrate that Seigel violated RICO, CUTPA, CHIFA and common law fraud and, thus liability has been established.

The gravamen of Seigel's Opposition is that Allstate's motion amounts to an impermissible request to enter judgment on a portion (but not all) of one or more individual claims. To the contrary, Seigel admits that:

(a) he engaged in a scheme to defraud insurers (Seigel's 56 Statement, ¶¶11-19);

(b) with the intent to obtain payment for medical tests that he did not perform (Seigel's 56 Statement, ¶¶11-19);

(c) he accomplished the intended scheme in part by way of the U.S. Mail (Seigel's 56 Statement, ¶¶16-19);

(d) Allstate "almost certainly" was a target of his fraudulent mailings (Seigel's 56 Statement, ¶14); and

(e) Allstate sustained damages as a result of his fraudulent conduct (Seigel's 56 Statement, ¶24).

While it is true that Allstate has identified several categories of ***damages*** resulting from Seigel's scheme (Needle EMG, Nerve Conduction, etc.), the nature and amount of damages to which Allstate is entitled is beyond the scope of the instant motion. The undisputed record evidence compels entry of judgment and *liability*, as follows:

B.   RICO

Civil RICO liability will attach upon a showing: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' conducts or participates in (5) an 'enterprise' (6) the activities of which affect interstate or foreign commerce, resulting in damage to plaintiff. Moss v. Morgan Stanley, Inc., 719 F.2d 5, 17 (2d Cir. 1983). Id.

The undisputed record facts compel entry of judgment for Allstate on Seigel's RICO liability. By his own admission:

- Seigel created and submitted fraudulent medical bills through the U.S. Mail on at least two (2) occasions with the intent to obtain money from insurers to which he was not entitled constituting a pattern of mail fraud.

Allstate's 56 Statement ¶¶16-18; Seigel's 56 Statement ¶¶4, 11-12, 14, 16-19;

- Allstate "almost certainly" was a recipient of Seigel's false medical documentation (Seigel's 56 Statement, ¶14);
- Seigel carried out his scheme through his participation in and control of Seigel, P.C., the activities of which affect interstate commerce (Seigel's 56 Statement, ¶4-6);
- Resulting in injury to Allstate (Seigel's 56 Statement, ¶24).

Whereas the only element left to be determined is the extent of Allstate's damages, entry of summary judgment for *liability* on Count I is proper.

C.   Fraud

To establish a claim of fraud under Connecticut law, plaintiff must establish that the defendant intentionally advanced a misrepresentation of material fact about which the plaintiff reasonably relied to its detriment. See Chanoff v. U.S. Surgical Corp., 857 F. Supp. 1011, 1017 (D. Conn. 1984); Billington v. Billington, 220 Conn. 212, 217 (1991).

The essence of Allstate's *racketeering* Complaint is that Seigel engaged in a *scheme to defraud* it through the submission of false medical documentation. Seigel has confessed "that he intentionally engaged in a *scheme to defraud* insurance carriers by creating false medical documentation and that the objective of the scheme was to be paid improperly." Seigel's Opposition, p. 5; Seigel's 56 Statement, ¶¶11-19 (emphasis added). Accordingly, it is beyond dispute that Seigel engaged in conduct sufficient to support a finding of *liability* for fraud.

Although he denies "personal knowledge" whether Allstate received false bills, he concedes with near certainty that Allstate was a recipient of the fraudulent medical documentation. Seigel's 56 Statement, ¶¶14, 24. Moreover, Allstate's evidentiary

- 3 -

submission in support of summary judgment confirms Seigel's suspicion that Allstate was a victim of his crime. There is no dispute that Allstate sustained injury as a result of Seigel's wrongful conduct. Seigel's 56 Statement, ¶24.

Clearly, defendant's admission that he engaged in a scheme to *defraud* constitutes prima facie evidence sufficient to support a finding of *liability* on Allstate's *fraud* claim. Allstate alleges a scheme to defraud. Seigel admits to engaging in a scheme to defraud. Whereas the only element left to be decided by a trier of fact is the amount of damages to which Allstate is entitled, entry of summary judgment for *liability* on Count IV is proper.

D.  Connecticut Unfair Trade Practices Act ("CUTPA")[1]

To prevail on a claim under CUTPA, a plaintiff must demonstrate (1) that the conduct at issue constitutes an unfair and deceptive practice, and (2) plaintiff sustained damages. Defendant does not dispute that his confessed, fraudulent medical billing scheme constitutes an unfair and deceptive business practice. It is equally uncontroverted that Allstate sustained damages as a result of Seigel's fraud. Seigel's 56 Statement, ¶24; Allstate's 56 Statement, ¶24. Accordingly, having made an undisputed showing of the two essential elements required to establish CUTPA *liability*, Allstate requests that summary judgment on *liability* enter against Seigel on Count IV.

E.  Connecticut Health Insurance Fraud Act ("CHIFA")

"A person is guilty of health insurance fraud when he, with the intent to defraud or deceive any insurer ... presents or causes to be presented to any insurer or any agency thereof, any written or oral statements as part of or in support of a ... claim for payment ... knowing that such statement contains any false, incomplete, deceptive or misleading

---

[1] Defendant's insistence that CUTPA contains "a reasonable reliance element" (Seigel Opposition, p.7) has no foundation in the law. See, e.g., Hinchcliffe v. American Motors Corp., 184 Conn. 607, 616-617 (1981) (explaining that CUTPA provides "an action more flexible and a remedy more complete than did the common law"). Notwithstanding defendant's misstatement of controlling legal authority, the uncontroverted evidence is that Allstate did rely upon Seigel's fraudulent medical bills in paying those claims identified in its Complaint.

information concerning any facts or thing material to such claim." Conn. Gen. Stat. § 53-442 (emphases added). CHIFA provides for recovery by a successful plaintiff of "all damages" for violations of this statute.

The defendant's admission that he orchestrated a scheme to defraud insurance carriers (including Allstate) constitutes prima facie evidence of his *liability* under CHIFA. Moreover, Seigel admits that his wrongful conduct caused Allstate injury. Seigel's 56 Statement, ¶24. Accordingly, the undisputed record facts establish the two essential elements of CHIFA *liability* – (1) intent and (2) presentment, and Allstate is entitled to partial summary judgment on Count VII.

## II. RULE 56(d)

Rule 56(d) entitled **"Case Not Fully Adjudicated on Motion"**, provides:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Pursuant to Rule 56(d), the Court, upon a motion for summary judgment, is "required to ascertain by examination of the pleadings and the evidence before it, what material facts exist without substantial controversy and what material facts are actually in good-faith controverted, and thereupon, to make an order specifying the facts that appear without substantially controversy, and directing such further proceedings in the action as are just." Griffin v. Griffin, 327 U.S. 220, 225-226 (1946); see Leddy v. Standard Dry

Wall, Inc., 875, 383, 385 (2d Cir. 1989); SEC v. Thrasher, 152 F. Supp. 2d 291 (S.D.N.Y. 2001); In re: Aircrash Disaster Near Warsaw, Poland v. Lot Policy Airlines, 979 F. Supp. 164 (E.D.N.Y. 1997). Courts have recognized that Rule 56(d) is akin to a pretrial order under Rule 16, Fed. R. Civ. P., and "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Gucci America, Inc. v. Ashley Reed Trading, Inc., 2003 U.S. Dist. LEXIS 18062 (S.D.N.Y. Oct. 10, 2003) (citing 56(d), Fed. R. Civ. P., 1946 Advisory Committee Notes). However, the Court's obligation to narrow the issues under Rule 56(d) is not inconsistent with the duty to award judgment on "all or part" of a claim under Rule 56(a). See, e.g., J.F. Blackford v. Action Products Co., Inc., 92 F.R.D. 79 (W.D. Mo. 1981) (recognizing that a Rule 56(d) order may be issued as part of a summary judgment determination under Rule 56(a), or in cases which no judgment is warranted, but certain factual issues have been decided").

If the Court denies Allstate's request to enter judgment on liability in connection with any of the Counts at issue, Allstate respectfully requests that the Court enter an Order pursuant to Rule 56(d), specially finding the uncontroverted, record facts as contained at Attachment A. Such an order will narrow issues for trial, advance principles of judicial economy, conserve the resources of the litigants and avoid unnecessary waste of the jury's deliberation.

### III. REFUTATION OF DEFENDANTS' ERRONEOUS FACTUAL ASSERTIONS

1. Needle EMG Admission

In his Statement submitted in support of defendant's Opposition, Seigel contends that "only a small percentage of the needle EMG test Dr. Seigel billed for were not, in fact, performed." Statement of Arthur Seigel (hereinafter "A.S. Aff. ___") at ¶6. This

contradicts Seigel's prior sworn confessions in this matter that (1) "many" of the 7,000 needle EMG tests in connection with which he issued invoices during December 1996 through August 2000 were not performed, or (2) he cannot identify in which files he created false medical documentation regarding needle EMG testing, and (3) that "over a period of time the number of EMG procedures not done was relatively substantial." Dr. Seigel Admission, Nos. 43, 44; Dr. Seigel's Int. Ans. No. 3. Any attempt by Seigel to contradict prior testimony should be stricken. See Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806 (1999); Rule v. Brine, Inc., 85 F. 3d 1002 (2d Cir. 1996).

2. False Medical Documentation

At paragraph 11 of his Statement, Seigel insists that he "never artificially inflated the patient's medical injuries in the report or otherwise wrote reports that were misleading or intentionally inaccurate." A.S. Aff. At ¶11; Seigel's 56 Statement, §II, ¶7; but see Seigel's 56 Statement, ¶18. However, it is unconverted that Seigel billed falsely for "many" of the 7,000 needle EMG tests he reportedly performed during 1996 through 2000. Seigel admits that the restitution payment of $450,000 represents the "fraud loss" or a "reasonable approximation of the value of the monies" he obtained by fraud. Seigel Opposition, p. 2. Seigel billed $140.00 per needle EMG procedure. Affidavit of Michael Bruno in Support of Plaintiff's Application for Prejudgment Remedies, ¶33. Arguably, then, Seigel billed insurers (including Allstate) for 3,214 ($450,000 ÷ 140) for testing that was not performed during 1996-2000. The agreed upon fraud loss calculations support the conclusion that Seigel billed falsely in connection with 46% (3,214 false test of 7,000 billed) of all Needle EMGs billed during 1996-2000. Accordingly, no matter how the numbers are defined (i.e., many, some, small percentage, etc.) defendant's reports were

misleading and intentionally inaccurate at least to the extent such medical documentation referenced, interpreted and/or were construed in light of testing that was not performed.

3. <u>Nature of Damages</u>

In her statement submitted in support of defendant's Opposition, Ellen Seigel asserts that five (5) of the twenty-five (25) exemplar patients' bills were not paid in whole or in part by Allstate. Statement of Ellen Seigel at ¶4. It is well known to the defendant (and defense counsel) that Allstate's claim for damages is compromised of several components. Ellen Seigel correctly indicates at ¶3 of her statement that Allstate claims to have been "ultimately responsible" for the bills defendants' generated in connection with each of the patients identified in Allstate's Complaint.[2] Allstate was ultimately responsible for payment of the fraudulent invoice whether the payment was made directly to Seigel, P.C. or to one of Seigel's former patients in the form of a settlement. Seigel has acknowledged that he was typically paid out of the proceeds of third-party tort settlements. Deposition of Arthur M. Seigel dated October 22, 2003, at 145-146, excerpts of which are annexed hereto at Tab B. In any event, inasmuch as this motion seeks partial summary judgment regarding *liability*, and the issue of damages has been expressly set aside pursuant to Allstate's express request for relief, the entirety of Ellen Seigel's statement is of no consequence to the Court's consideration of the instant motion.

---

[2] In its Amended Complaint, Allstate inadvertently alleged that it had notice of Seigel's fraudulent conduct in 2000. By separate motion, Allstate will move to conform the pleadings to the evidence and correct this scrivener's oversight. Allstate did not learn of Seigel's fraudulent conduct until (at the earliest) November 2001, when Seigel plead guilty to Mail Fraud in connection with false Needle EMG billing. Seigel's sentencing in connection with his criminal case occurred in May 2002. It was not until Seigel's sentencing that the issues of nerve conduction study fraud and misleading diagnoses were made public through the testimony of the government's expert, Neil A. Busis, M.D. Of course, Seigel continues to deny any fraud other than Needle EMG, and insists that he is not able to identify those cases in connection with which he committed any type of fraud. Ellen Seigel claims that she was unaware of her husband's fraudulent scheme until his plea hearing in late 2001. Moreover, the balance of record evidence is consistent with Notice to Allstate occurring in late 2001 – early 2002. Affidavit of Michael Bruno in Support of Plaintiffs' Application for Prejudgment Remedies, ¶¶48-49.

## IV. **CONCLUSION**

By reason of his intentional creation and submission via the U.S. Mail of false medical bills upon which Allstate relied to its detriment, Seigel's *liability* for RICO, CUPTA, CHIFA and fraud has been established and the parties agree that the only matter remaining for trial will be the amount of damages to which Allstate is entitled (or as Seigel puts it – "determine the extent of Dr. Seigel's liability to Allstate" Seigel's Opposition, p. 8).

For all of the foregoing reasons, Allstate respectfully requests that the Court enter partial summary judgment against Arthur M. Seigel, M.D. on Counts I, IV, V and VI in connection with Allstate's Amended Complaint. In the alternative, Allstate requests that this Court enter an Order pursuant to Rule 56(d), Fed. R. Civ. P., and specially find the uncontroverted facts as proposed on Attachment A.

Respectfully Submitted,
Plaintiffs,
*Allstate Insurance Company and Allstate Indemnity Company,*
By their Attorneys,

_____
David O. Brink
Federal Bar No. CT23989
Richard D. King, Jr.
Federal Bar No. CT23997
Nathan A. Tilden
Federal Bar No. CT24011
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, MA 02171
Tel. (617) 770-2214

## CERTIFICATE OF SERVICE

I, Richard D. King, Jr., attorney for the plaintiffs, hereby certify that I mailed, postage prepaid a copy of the document listed below to:

Ira B. Grudberg, Esq.
David L. Belt, Esq.
Jacobs, Grudberg, Belt & Dow, P.C.
350 Orange Street
P.O. Box 606
New Haven, CT  06503-0606

Joel Rottner, Esq.
Skelly & Rottner, P.C.
433 S. Main St.
West Hartford, CT 06610-1670

- Plaintiffs' Reply Brief

_____
Richard D. King, Jr.

Dated:  February 28, 2005