# A

## ALLSTATE'S PROPOSED RULE 56(d) FINDINGS OF UNCONTROVERTED FACT

1. At all relevant times, Allstate Insurance Company and Allstate Indemnity Company (hereinafter collectively referred to as "Allstate") were insurers duly authorized to carry on the business of insurance in the State of Connecticut. Allstate's 56 Statement, ¶1; Seigel's 56 Statement, ¶1.

2. At all relevant times, Dr. Seigel was a medical doctor, board certified in neurology and licensed to practice in Connecticut. Allstate's 56 Statement, ¶2; Seigel's 56 Statement, ¶2.

3. Dr. Seigel is the principal of defendant, Arthur M. Seigel, P.C. (hereinafter "Seigel, P.C."). Allstate's 56 Statement, ¶3; Seigel's 56 Statement, ¶3.

4. Seigel, P.C. was a professional corporation operating offices and/or medical clinics located in New Haven and Wallingford, Connecticut. Allstate's 56 Statement, ¶4; Seigel's 56 Statement, ¶4.

5. Arthur M. Seigel, M.D. and Ellen Seigel were the sole shareholders of Seigel, P.C. Allstate's 56 Statement, ¶5; Seigel's 56 Statement, ¶5.

6. Seigel, P.C. employed approximately 5-8 employees during the period described in Allstate's Complaint. Allstate's 56 Statement, ¶6; Seigel's 56 Statement, ¶6.

7. Dr. Seigel was trained in the performance of Needle EMG testing. Allstate's 56 Statement, ¶8; Seigel's 56 Statement, ¶8.

8. Needle EMG testing requires the use of needles. Allstate's 56 Statement, ¶9; Seigel's 56 Statement, ¶9.

9.  Needle EMG testing is an invasive procedure that requires the subcutaneous insertion of a needle into one or more muscles. Allstate's 56 Statement, ¶10; Seigel's 56 Statement, ¶10.

10. Dr. Seigel, through Seigel, P.C. intentionally engaged in a scheme to defraud insurance carriers. Allstate's 56 Statement, ¶11; Seigel's 56 Statement, ¶11.

11. The objective of Dr. Seigel's fraudulent scheme was to obtain money by causing insurers, including Allstate, to pay, directly or indirectly, for medical treatment that was never performed or performed incompletely. Allstate's 56 Statement, ¶12; Seigel's 56 Statement, ¶12.

12. Dr. Seigel intentionally did not perform many of the Needle EMG procedures for which he submitted bills to insurance companies from December 1996 through August 2000. Allstate's 56 Statement, ¶13; Seigel's 56 Statement, ¶13.

13. Of the approximately 7,000 Needle EMG procedures in connection with which Dr. Seigel billed insurers during December 1996 through August 2000, Dr. Seigel intentionally billed insurers (including Allstate) falsely for tests that were not performed. Allstate's 56 Statement, ¶14; Seigel's 56 Statement, ¶14.

14. Dr. Seigel cannot identify in which files he created false medical documentation regarding needle EMG testing in connection with Allstate insureds and/or Allstate claimants. Allstate's 56 Statement, ¶15; Seigel's 56 Statement, ¶15.

15. Dr. Seigel mailed at least two (2) pieces of false medical documentation regarding Allstate claimants through the U.S. Mail within the last ten (10) years. Allstate's 56 Statement, ¶16; Seigel's 56 Statement, ¶16.

16.  It was routine business practice for Seigel, P.C. to issue medical records and medical invoices demanding payment for and referencing Needle EMG testing through the U.S. Mail with knowledge that such medical documentation would be relied on by others.  Allstate's 56 Statement, ¶17; Seigel's 56 Statement, ¶17.

17.  Dr. Seigel created and submitted false and fraudulent documentation including false medical billing invoices and reports and intentionally violated the laws of the United States by, devising and intending to devise schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and by causing to be placed, in a post office and/or authorized depository for mail matter, things to be sent and delivered by the United States Postal Service, in violation of 18 U.S.C. §1341 (mail fraud) for the purpose of executing such fraudulent schemes and attempting to do so.  Allstate's 56 Statement, ¶18; Seigel's 56 Statement, ¶18.

18.  Dr. Seigel pled guilty in connection with charges that he engaged in a scheme to defraud insurance carriers by intentionally billing for Needle EMG tests that Seigel did not perform.  Allstate's 56 Statement, ¶19; Seigel's 56 Statement, ¶19.

19.  In connection with the criminal charges brought by the U.S. Attorney's Office for the District of Connecticut, Dr. Seigel confessed that "many" of the 7,000 Needle EMG tests for which he billed and collected payment from insurers were <u>not</u> performed.  Allstate's 56 Statement, ¶20; Seigel's 56 Statement, ¶20.

20.  As detailed in Allstate's Complaint, Dr. Seigel's former patients have reported that they did not receive Needle EMG testing from Dr. Seigel despite his submission of an invoice demanding payment for such tests.  Allstate's 56 Statement, ¶21; Seigel's 56 Statement, ¶21.

21. Allstate received Seigel invoices and the other claim-related documentation demanding payment for and referencing Needle EMG tests through the U.S. Mail. Allstate's 56 Statement, ¶22; Seigel's 56 Statement, ¶14.

22. In connection with each of the claims alleged in its Complaint, Allstate's ultimate payment was made in reasonable reliance upon the false and fraudulent documentation and representations submitted by Dr. Seigel, through Seigel, P.C. Allstate's 56 Statement, ¶23.

23. Allstate sustained damage to its business and property as a result of the wrongful conduct of defendant, Arthur M. Seigel, M.D. Allstate's 56 Statement, ¶24; Seigel's 56 Statement, ¶24.

24. Arthur M. Seigel, M.D., P.C. (hereinafter "Seigel, P.C.") is an enterprise for purposes of RICO. Allstate's 56 Statement, ¶¶3-6; Seigel's 56 Statement, ¶¶3-6.

25. Dr. Seigel participated in the affairs of Seigel, P.C. enterprise in connection with the allegations contained in Allstate's Amended Complaint. Allstate's 56 Statement, ¶¶3-4, 11; Seigel's 56 Statement, ¶¶3-4, 11.

# B

```
                                        Volume: I
                                        Pages:  1-308
                                        Exhibits: 1
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

C.A. NO. 303CV0577-JBA

```
ALLSTATE INSURANCE COMPANY        )
and ALLSTATE INDEMNITY COMPANY,   )
                                  )
              Plaintiffs,         )
                                  )
vs.                               )
                                  )
ARTHUR M. SEIGEL, M.D.,           )
ARTHUR M. SEIGEL, M.D., P.C.      )
and ELLEN SEIGEL,                 )
                                  )
              Defendants.         )
```

**DEPOSITION OF ARTHUR M. SEIGEL**

A Witness called by and on behalf of the Plaintiffs, pursuant to the Federal Rules of Civil Procedure, before Linda Lee Barry, a Certified Court Reporter and Notary Public within and for the Commonwealth of Massachusetts, at the Law Offices of Skelley & Rottner, P.C., 433 South Main Street, West Hartford, Connecticut 02169, commencing on Wednesday, October 22, 2003, at 9:53 a.m.

1   MR. GRUDBERG: Object. You've got to
2   separate first party claims, bills that were
3   sent direct to Allstate, from getting paid
4   from the patient.
5   MR. BRINK: I do not have to ask the
6   question that you want to ask. You can raise
7   an objection. I will press that question.
8   MR. GRUDBERG: I object, because you
9   don't separate it.
10   MR. BRINK: Please note on the transcript
11   here again I believe this is inappropriate
12   coaching. Will you answer the question, sir?
13   A.   Repeat the question, please.
14   MR. BRINK: Read back the question
15   please.
16   **(Whereupon, the court reporter read back**
17   **the previous question as follows:)**
18   Q.   You understood, therefore, that the
19       money you were defrauding was
20       coming from automobile insurers
21       such as Allstate; is that right?
22   THE WITNESS: Well, I think I have
23   answered that question. The money is coming
24   from the patient via money sent from Allstate

1          and other insurance companies.

2    (BY MR. BRINK)

3    Q.    Can you answer my question yes or no?

4    A.    No.

5    Q.    Why not?

6    A.    Because it requires an explanation.

7    Q.    What is that explanation?

8    A.    I just gave it to you.

9    Q.    What is that explanation?

10         MR. GRUDBERG: Could we read the answer?

11         **(Whereupon, the court reporter read back**

12         **the previous answer as follows:)**

13   A.    Well, I think I have answered that

14         question. The money is coming from

15         the patient via money sent from

16         Allstate and other insurance

17         companies.

18   Q.    Let me see if I can ask it a different way,

19         sir. When you prepared bills and reports

20         that contained false information and false

21         billings, did you know that those reports

22         would be relied upon by other people?

23   A.    Yes.

24   (BY MR. BRINK)