UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY and | ) | C.A. NO. 3:03 CV 0577 MRK |
| ALLSTATE INDEMNITY COMPANY, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ARTHUR M. SEIGEL, M.D., | ) | |
| ARTHUR M. SEIGEL, M.D., P.C., | ) | |
| and ELLEN SEIGEL, | ) | |
|     Defendants. | ) | MARCH 28, 2005 |

**MEMORANDUM IN SUPPORT OF THE HARTFORD
FINANCIAL SERVICES GROUP, INC.'S MOTION TO QUASH OR MODIFY
SUBPOENA DUCES TECUM AND/OR FOR PROTECTIVE ORDER**

## I.   INTRODUCTION

Pursuant to Fed. R. Civ. P. 26(c) and 45, non-party The Hartford Financial Services

Group, Inc. ("HFSG") moves to quash or modify the Subpoena Duces Tecum (the "SDT")

served by Plaintiffs upon HFSG on or about February 9, 2005 or, in the alternative, for a

protective order maintaining the confidentiality of certain requested documents.  A copy of the

SDT is attached as Exhibit A to the Declaration of James A. Henderson (the "Henderson

Declaration" or "Henderson Dec."), which is attached hereto as Exhibit 1.  The SDT seeks

documents concerning HFSG's investigation into the fraudulent insurance billing practices of

Arthur Seigel, M.D., a neurologist based in New Haven, Connecticut.  A copy of HFSG's

Objections to the SDT is attached as Exhibit 2.

As grounds for its motion, HFSG submits:

A.    The SDT is not reasonably calculated to lead to the discovery of admissible evidence because HFSG is not a party in the underlying action, and Plaintiffs have no right to recover damages for money advanced by HFSG to Dr. Seigel.

B.    All documents created as part of HFSG's investigation into the fraudulent billing practices of Dr. Seigel were created in anticipation of litigation and are therefore protected from disclosure by Rule 26(b)(3) of the Federal Rules of Civil Procedure.

C.    Many of the requested documents are protected from disclosure by state and/or federal privacy laws, including the Gramm-Leach-Bliley Act (15 U.S.C. § 6802) and the Connecticut Insurance Information and Privacy Protection Act ("CIIPPA," Conn. Gen. Stat. § 38a-988).

D.    In the alternative, to the extent that HFSG is required to produce certain documents that are the subject of this motion, HFSG moves that the Court enter an order protecting the confidential and proprietary nature of the documents.

## II.    BACKGROUND

### A.    HFSG's Investigation of Dr. Seigel

HFSG first learned in approximately 1997 that Dr. Seigel was apparently billing HFSG and/or its underwriting companies for needle electromyography testing ("Needle EMG Testing") that he had not actually performed. (Exhibit 1, Henderson Dec., ¶ 3.) At that time, HFSG began conducting an investigation to determine whether it had paid medical or health insurance claims for Needle EMG Testing submitted by Dr. Seigel for testing that he never performed. Id., ¶ 4. This investigation was conducted with the involvement of HFSG's internal lawyers. Id., ¶ 5. Portions of the investigation were performed by an outside law firm. Id., ¶ 6. One of the reasons for this investigation was that HFSG anticipated that it would pursue litigation against Dr. Seigel for the recovery of amounts advanced by HFSG in connection with his fraudulent billing for Needle EMG Testing. Id., ¶ 7. HFSG intended this

investigation and the documents created during the investigation to be confidential and proprietary.  Id., ¶ 8.

During its investigation, HFSG reviewed its internal records concerning payments made to Dr. Seigel on behalf of insureds.  Many of these documents contain: (a) personal and/or privileged information concerning individuals and/or information received in connection with insurance transactions; (b) individually identifiable health information; and/or (c) non-public personal information provided to HFSG, which is a financial institution.  The investigative record includes the following information regarding the insureds of HFSG's underwriting companies: (a)  names; (b) birth dates; (c) social security numbers; (d) medical conditions; and (d) treatment and billing data for medical conditions.  Henderson Dec., ¶ 9.  In addition, HFSG  believes that it cannot produce the documents described in ¶ 9 of Mr. Henderson's Declaration without violating various state and federal privacy laws.  Id., ¶ 10.  Further, HFSG maintains these documents as confidential and proprietary business documents.  Id., ¶ 11.

**B.    The Subpoena Duces Tecum**

The SDT seeks the following categories of documents:

1.    statements and other documents relating to patients who reported that they did not receive Needle EMG Testing for which Dr. Seigel billed;

2.    "non-privileged" documents relating to HFSG's investigation concerning the fraudulent billing practices of Dr. Seigel; and

3.    documents referred to or relied upon in preparing and/or filed in support of HFSG's victim impact statement submitted in connection with the matter of United States of America vs. Arthur M. Seigel, Criminal Docket Number 3:01CR274.

See Exhibit 1, Attachment A.

3

The documents requested in the SDT do not have any relevance to this action. HFSG is not a party in this action. Further, Plaintiffs have no legal right to recover damages based upon money advanced by HFSG to Dr. Seigel. Henderson Dec., ¶ 12.

## III.   STANDARD OF REVIEW

### A.   Fed. R. Civ. P. 45(c)(3)

Fed. R. Civ. P. 45(c)(3) addresses motions to quash or modify subpoenas. Fed. R. Civ. P. 45(c)(3)(A) states that:

> On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it:
>
> (i)     fails to allow reasonable time for compliance . . .
>
> (iii)   requires disclosure of privileged or other protected matter and no exception or waiver applies, or
>
> (iv)    subjects a person to undue burden.

Fed. R. Civ. P. 45(c)(3)(A).

Additionally, Fed. R. Civ. P. 45(c)(3)(B) provides that:

> If a subpoena (i) requires disclosure of a trade secret or other confidential research, development or commercial information . . . the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena.

Fed. R. Civ. P. 45(c)(3)(B).

**B.**     **Fed. R. Civ. P. 26**

Fed. R. Civ. P. 26(c) governs motions for protective orders concerning discovery.

Rule 26(c) gives the court discretion to prohibit, limit or condition discovery in the following

ways:

> [F]or good cause shown, the court. . . may make any order which justice requires to
> protect a party or person from annoyance, embarrassment, oppression, or undue burden
> or expense, including one or more of the following:
>
> (1)     that the disclosure or discovery not be had; . . .
>
> (4)     that certain matters not be inquired into, or that the scope of the disclosure or
> discovery be limited to certain matters; . . .
>
> (7)     that a trade secret or other confidential research, development, or commercial
> information not be revealed or be revealed only in a designated way . . . .

Fed. R. Civ. P. 26(c).

**IV.     LEGAL ARGUMENT**

**A.     The SDT Is Not Reasonably Calculated to Lead to the Discovery of
Admissible Evidence Because HFSG is not a Party in the Underlying
Action, and Plaintiffs Have No Right to Recover Damages for Money
Advanced by HFSG to Dr. Seigel.**

Fed. R. Civ. P. 26(b) addresses the limitations on the scope of discovery.  Rule

26(b)(1) states that:

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to
> the claim or defense of any party, including the existence, description, nature, custody,
> condition, and location of any books, documents, or other tangible things and the
> identity and location of the persons having knowledge of any discoverable matter. . . .

> Relevant information sought need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. . . .

Fed. R. Civ. P. 26(b)(1). The United States Supreme Court has defined relevance, for purposes of Rule 26(b), to refer to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." <u>Oppenheimer Fund</u> <u>v. Sanders</u>, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389 (citing <u>Hickman v. Taylor</u>, 329 U.S. 495, 501 (1947)). "At the same time, discovery, like all matters of procedure, has ultimate and necessary boundaries." <u>Oppenheimer</u>, 437 U.S. at 352 (internal quotation marks omitted). Discovery of irrelevant material should be denied as not within the scope of Rule 26(b)(1). <u>Id.</u> at 351-52.

The documents subject to Plaintiffs' SDT are not reasonably calculated to lead to the discovery of admissible evidence. HFSG is not a party in this action. Further, Plaintiffs have no legal right to recover damages based upon money advanced by HFSG to Dr. Seigel. Henderson Dec. ¶ 12. Accordingly, Plaintiffs have no legitimate need for information concerning HFSG's payments to Dr. Seigel or information obtained from or concerning the insureds of HFSG's underwriting companies. Therefore, because requiring HFSG to identify, gather and produce all responsive documents would be unduly burdensome and unreasonable under Fed. R. Civ. P. 26(b)(1), Plaintiffs' requested discovery should be denied.

**B.    All Documents Created As Part of HFSG's Investigation into the
Fraudulent Billing Practices of Dr. Seigel Were Created in Anticipation of
Litigation and Are Therefore Protected from Disclosure.**

Fed. R. Civ. P. 26(b)(3) limits the discovery of materials prepared in anticipation of

litigation.  Rule 26(b)(3) states:

> a party may obtain discovery of documents and tangible things otherwise discoverable
> under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial
> by or for another party or by or for that other party's representative (including the other
> party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing
> that the party seeking discovery has substantial need of the materials in the preparation
> of the party's case and that the party is unable without undue hardship to obtain the
> substantial equivalent of the materials by other means.  In ordering discovery of such
> materials when the required showing has been made, the court shall protect against
> disclosure of the mental impressions, conclusions, opinions, or legal theories of an
> attorney or other representative of a party concerning the litigation.

Fed. R. Civ. P. 26(b)(3).

Many of the documents requested by Plaintiffs were prepared in anticipation of

litigation and should be protected from disclosure.  When HFSG first learned in approximately

1997 that Dr. Seigel was apparently billing HFSG for Needle EMG Testing that he had not

actually performed, HFSG began conducting an investigation to determine whether it had paid

medical or health insurance claims for Needle EMG Testing submitted by Dr. Seigel for

testing that he never conducted.  This investigation was performed with the involvement of

HFSG's internal lawyers and an outside law firm retained by HFSG.  One of the reasons for

the investigation was that HFSG anticipated pursuing litigation against Dr. Seigel for the

recovery of amounts advanced by HFSG concerning fraudulent billing for Needle EMG

Testing.  Henderson Dec., ¶¶ 3-8.

Plaintiffs do not have a substantial need for such documents.  As explained in § IV(A),

HFSG is not a party in the underlying action, and Plaintiffs have no right to recover damages

based upon money advanced by HFSG to Dr. Seigel. Plaintiffs' claims in this action relate to

Dr. Siegel's actions with regard to Allstate's insureds, not the insureds of HFSG's

underwriting companies. Accordingly, Plaintiffs have no need for information concerning

payments by HFSG's underwriting companies to Dr. Seigel or information obtained from or

concerning the insureds of HFSG's underwriting companies. For these reasons, Plaintiffs

should not be allowed to obtain discovery of documents prepared by HFSG in its investigation

of Dr. Seigel.

      **C.**      **Many of the Requested Documents Are Protected from Disclosure by State and/or Federal Privacy Laws, Including the Gramm-Leach-Bliley Act (15 U.S.C. § 6802) and the Connecticut Insurance Information and Privacy Protection Act ("CIIPPA," Conn. Gen. Stat. § 38a-988).**

      Many of the requested records also contain information that is protected by state and

federal privacy laws. Specifically, the Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801 et seq.,

and the Connecticut Insurance Information and Privacy Protection Act ("CIIPPA"), Conn.

Gen. Stat. §§ 38a-975 et seq., preclude HFSG from producing any documents containing

certain information obtained from or concerning insureds of its underwriting companies.

      **1.**      **The Gramm-Leach-Bliley Act**

      The Gramm-Leach-Bliley Act states that "[i]t is the policy of the Congress that each

financial institution has an affirmative and continuing obligation to respect the privacy of its

customers and to protect the security and confidentiality of those customers' nonpublic

personal information." 15 U.S.C. § 6801. In furtherance of this policy, § 6802(a) states that

"a financial institution may not directly or through an affiliate, disclose to a nonaffiliated third

party any nonpublic personal information . . . ." 15 U.S.C. § 6802(a). Section 6809 defines

nonpublic personal information as "personally identifiable information – (i) provided by a consumer to a financial institution; (ii) resulting from any transaction with the consumer or any service performed by the consumer; or (iii) otherwise obtained by the financial institution." 15 U.S.C. § 6809(4).

Many of the requested documents fall within the scope of Gramm-Leach-Bliley. The Act applies to HFSG because it is a financial institution. Henderson Dec., ¶ 9. In addition, the requested documents fall within the scope of the Gramm-Leach-Bliley Act because they contain personally identifiable information regarding consumers. This information may include, without limitation, individuals' names, birth dates, social security numbers, medical conditions, and treatment and billing for medical conditions. Henderson Dec., ¶ 9. Accordingly, HFSG cannot produce many of the requested documents without violating Gramm-Leach-Bliley. Plaintiffs' discovery of these documents should therefore be precluded.

### 2.    Connecticut Insurance Information and Privacy Protection Act

CIIPPA prevents insurance companies from disclosing certain consumer information relating to insurance transactions. Specifically, CIIPPA states:

> an insurance institution, agent or insurance-support organization shall not disclose any personal or privileged information concerning an individual collected or received in connection with an insurance transaction.

Conn. Gen. Stat. § 38a-988.

> "Personal information" means:

> any individually identifiable information gathered in connection with an insurance transaction from which judgments can be made about an individual's character, habits, avocations, finances, occupation, general reputation, credit, health or any other personal characteristics. "Personal information" includes an individual's name and address and "medical-record information" but does not include "privileged information".

Conn. Gen. Stat. § 38a-976(t)

> "Privileged information" means:
>
>  any individually identifiable information that:  (1) Relates to a claim for insurance benefits or a civil or criminal proceeding involving an individual, and (2) is collected in connection with or in reasonable anticipation of a claim for insurance benefits or a civil or criminal proceeding involving an individual; provided information otherwise meeting the requirements of this subsection shall nevertheless be considered "personal information" under sections 38a-975 to 38a-998, inclusive, if it is disclosed in violation of section 38a-988.

Conn. Gen. Stat. § 38a-976(w).

Many documents requested by Plaintiffs clearly fall within the protection of CIIPAA.

Plaintiffs have requested statements and other documents relating to patients who reported that

they did not receive Needle EMG Testing for which Dr. Seigel billed, documents relating to

HFSG's investigation concerning the fraudulent billing practices of Dr. Seigel, and documents

created and referenced in connection with the matter of <u>United States of America vs. Arthur</u>

<u>M. Seigel</u>, Criminal Docket Number 3:01CR274.  These documents include information

concerning insureds' names, birth dates, social security numbers, medical conditions, and

treatment and billing for medical conditions.  Henderson Dec., ¶9.  This information is

protected by CIIPPA, and Plaintiffs' discovery should therefore be precluded.

      **D.**     **<u>To the extent that HFSG is Required to Produce Certain Documents that Are the Subject of this Motion, HFSG Moves that the Court Enter an Order Protecting the Confidential and Proprietary Nature of the Documents.</u>**

For the reasons stated above, Plaintiffs' subpoena should be quashed in its entirety.  To

the extent that HFSG is required to produce any of the subpoenaed documents, however,

HFSG requests that the Court enter a protective order maintaining the confidential and

proprietary nature of the documents at issue for two reasons.  First, as previously discussed, many of the requested documents contain private information concerning individuals, and the privacy interests of those individuals should be protected.

Second, many of the requested documents are confidential and proprietary business documents, and HFSG has treated them as such.  These documents include, without limitation, customer and billing information, see Henderson Dec., ¶9, and could harm HFSG's business if made available to the public or to competitors.  In this regard, HFSG notes that Plaintiffs are competitors of HFSG and its underwriting companies in the insurance industry.  Therefore, to the extent that it is required to produce any of the documents discussed in this motion, HFSG requests that the Court enter an appropriate protective order maintaining the confidentiality of these documents from the public and competitors, including Plaintiffs.

## V.     CONCLUSION

For the foregoing reasons, HFSG requests that the Court grant its Motion to Quash or

Modify and/or for Protective Order.

NON-PARTY,
THE HARTFORD FINANCIAL
SERVICES GROUP, INC.


By _____
        Jason M. Price
        Federal Bar No. 20126
        Shipman & Goodwin LLP
        One Constitution Plaza
        Hartford, CT 06103-1919
        Tel:  (860) 251-5000
        Fax:  (860) 251-5218
        E-mail:  jprice@goodwin.com

12

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing Memorandum in Support of Motion to Quash or Modify Subpoena and/or for Protective Order was mailed, via U.S. mail, postage prepaid, this 28th day of March, 2005, to:

| | |
|---|---|
| Richard D. King, Jr., Esq.<br>David O. Brink, Esq.<br>Nathan A. Tilden, Esq.<br>Smith & Brink, P.C.<br>122 Quincy Shore Drive<br>2nd Floor<br>Quincy, MA 02171 | Joel Rottner, Esq.<br>Skelley Rottner, P.C.<br>Corporate Center West<br>433 S. Main Street, Suite 305<br>P.O. Box 340890<br>West Hartford, CT 06110 |
| David L. Belt, Esq.<br>Ira B. Grudberg, Esq.<br>Joshua D. Lanning, Esq.<br>Jacobs, Grudberg, Belt, Dow & Katz, P.C.<br>350 Orange Street<br>P.O. Box 606<br>New Haven, CT 06503-0606 | Matthew Dallas Gordon, Esq.<br>406 Farmington Avenue<br>Farmington, CT 06032 |

Jason M. Price

398589 v.01 S3

1

RECYCLED

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY and | ) | C.A. NO. 303 CV 0577 MRK |
| ALLSTATE INDEMNITY COMPANY, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | RECORDS ONLY |
| | ) | SUBPOENA |
| ARTHUR M. SEIGEL, M.D., | ) | |
| ARTHUR M. SEIGEL, M.D., P.C., | ) | |
| and ELLEN SEIGEL, | ) | |
|     Defendants. | ) | MARCH 23, 2005 |

## DECLARATION OF JAMES A. HENDERSON

James A. Henderson, being first duly sworn, deposes and says:

1.    I am Vice President of Fraud Management for The Hartford Financial Services Group, Inc. ("HFSG"). I submit this declaration in support of HFSG's Motion to Quash and/or for Protective Order. The facts set forth below are based on my personal knowledge and upon a review of various documents.

2.    I understand that Plaintiffs served a subpoena duces tecum upon HFSG on or about February 9, 2005 requesting various documents concerning HFSG's investi gation of fraudulent billing for needle electromyography testing ("Needle EMG Testing") allegedly performed by Arthur M. Seigel, M.D. A copy of that subpoena is attached hereto as Exhibit A. HFSG is not a party in this action.

3.    By way of background, HFSG first learned in approximately 1997 that Dr. Seigel, a New Haven, Connecticut based neurologist, was apparently billing HFSG for Needle EMG Testing that he had not actually performed.

4.      At that time, HFSG began conducting an investigation to determine whether it had paid medical and/or health insurance claims for Needle EMG Testing submitted by Dr. Seigel for testing that he did not actually perform.

5.      This investigation was performed with the involvement of HFSG's internal lawyers.

6.      Portions of the investigation were performed by an outside law firm.

7.      This investigation was performed in part in anticipation of pursuing litigation against Dr. Seigel for the recovery of amounts advanced by HFSG concerning fraudulent billing for Needle EMG Testing.

8.      HFSG intended this investigation and the documents created during the investigation to be confidential and proprietary.

9.      During its investigation, HFSG referenced its internal records concerning payments made to Dr. Seigel on behalf of HFSG's insureds. Many of t hese documents contain: (a) personal and/or privileged information concerning individuals and/or received in connection with insurance transactions; (b) individually identifiable health information; and/or (c) non-public personal information provided by insureds to HFSG, which is a financial institution. This information may include without limitation: (a) individual's names; (b)  birth dates; (c) social security numbers; (d) medical conditions; and (d) treatment and billing for medical conditions.

10.     HFSG does not believe that it can produce the documents described in ¶  9 without violating various state and federal privacy laws.

11.    HFSG maintains the documents referenced in ¶ 9 as confidential and proprietary business documents.

12.    HFSG does not believe that the documents requested in the subpoena have any relevance to this action.  HFSG is not a party in this action.  Further, Plaintiffs have no legal right to recover damages based upon money advanced by HFSG to Dr. Seigel.

13.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: 03/24/05                    _____
                                                              James A. Henderson

398241 v1

A



# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

C. A. NO.  303 CV 0577 MRK

ALLSTATE INSURANCE COMPANY and )
ALLSTATE INDEMNITY COMPANY )
    Plaintiffs, )
                                ) *RECORDS ONLY*
                                    ) *SUBPOENA*
v. )
                                    )
ARTHUR M. SEIGEL, M.D., )
ARTHUR M. SEIGEL, M.D., P.C., )
and ELLEN SEIGEL, )
    Defendants. )

**LAW DEPARTMENT**

**FEB 09 '05**

**RECEIVED**

TO:  Keeper of Records
      Michael Johnson
      The Hartford Financial Services Group, Inc.
      Hartford Plaza
      690 Asylum Avenue
      Hartford, CT 06115

*GREETINGS:*

    *YOU ARE HEREBY COMMANDED* in accordance with the provisions of
Rule 45 of the Federal Rules of Civil Procedure to produce the documents, materials
and things described in the attached Schedule A at the law offices of Skelley &
Rottner, P.C., 433 S. Main St., West Hartford, CT 06610-1670 on February 24,
2005, at 9:00 a.m., in connection with the above referenced matter.

    Rule 45, Fed. R. Civ. P., provides in part:

(c)    <u>Protection of Persons Subject to Subpoenas</u>.

(1)    A party or an attorney responsible for the issuance and service of a
        subpoena shall take reasonable steps to avoid imposing undue burden
        or expense on a person subject to that subpoena.  The court on behalf
        of which the subpoena was issued shall enforce this duty and impose
        upon the party or attorney in breach of this duty an appropriate
        sanction, which may include, but is not limited to, lost earnings and a
        reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of
        designated books, papers, documents or tangible things, or inspection

of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(b)     Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within fourteen (14) days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

    (i)     fails to allow reasonable time for compliance;

    (ii)    requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iv) subjects a person to undue burden.

(B)  If a subpoena

    (i)   requires disclosure of a trade secret or other confidential research, development, or commercial information, or

    (ii)  requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

    (iii)  requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  **Duties in Responding to Subpoena.**

    (1)   A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

    (2)   When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

*YOUR PERSONAL APPEARANCE AT DEPOSITION WILL BE EXCUSED IF THE RECORDS DESCRIBED IN THE ATTACHED "SCHEDULE A" ARE DELIVERED TO JOEL ROTTNER, ESQ., AT THE OFFICES OF SKELLEY ROTTNER, P.C., 433 S. MAIN ST., WEST HARTFORD, CT 06610-1670, PRIOR TO FEBRUARY 24, 2005.*

**HEREOF FAIL NOT** as you will answer your default under the pains and penalties in the law in that behalf made and provided.

Dated this ⟍ day of ⟋⟍⟋ 2005.

Respectfully Submitted,
*Allstate Insurance Company and*
*Allstate Indemnity Company*
By their Attorney,

Richard D. King, Jr., BBO #638142
Federal Bar No. CT23997
SMITH & BRINK, P.C.
122 Quincy Shore Drive, 2nd Floor
Quincy, Massachusetts 02171
Tel.: (617) 770-2214
Fax.: (617) 774-1714

Joel Rottner, Esq.
Federal Bar No. CT05612
Skelley Rottner, P.C.
P.O. Box 340890
Hartford, CT 06134
Tel.: (860) 561-7077
Fax.: (860) 561-7088

Notary Public
My Commission Expires: _____

Victor E. Magazian
Notary Public
My Commission Expires
February 28, 2007

## SCHEDULE A

1.     Any and all statements and documents, regardless of the media used to memorialize or store such information, regarding and/or obtained from Dr. Arthur M. Seigel's former patients who reported that they did not receive needle electromyography testing ("Needle EMG") (CPT Code 95860) from Dr. Arthur M. Seigel in connection with cases in which Dr. Seigel and/or Arthur M. Seigel, M.D., P.C. issued invoices demanding payment for Needle EMG testing.

2.     Any and all non-privileged documents relating to The Hartford Financial Services Group, Inc.'s investigation of Dr. Arthur M. Seigel's medical billing practices pertaining to the alleged provision of Needle EMG testing and Nerve Conduction testing during 1996-present, and including, but not limited to, Siegel patient statements, transcripts, witness statements, claimant files and records, photographs, videotapes, medical records and invoices, investigative reports, damage calculations and FBI materials, regardless of the media used to memorialize or store such information.

3.     Any and all documents referred to or relied upon in preparing and/or filed in support of The Hartford Financial Services Group, Inc.'s victim impact statement submitted in connection with the matter of United States of America vs. Arthur M. Seigel, Criminal Docket Number 3:01CR274, including but not limited to Seigel patient statements, transcripts, witness statements, claimant files and records, photographs, videotapes, medical records and invoices, investigative reports, damage calculations and FBI materials, regardless of the media used to memorialize or store such information.

*YOUR PERSONAL APPEARANCE AT THE DEPOSITION WILL BE EXCUSED IF THE RECORDS DESCRIBED IN SCHEDULE A ARE DELIVERED TO JOEL ROTTNER, ESQ., THE OFFICES OF SKELLEY ROTTNER, P.C., 433 S. MAIN ST., WEST HARTFORD, CT 06610-1670, PRIOR TO FEBRUARY 24, 2005.*

2



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY and | ) | C.A. NO. 303 CV 0577 MRK |
| ALLSTATE INDEMNITY COMPANY, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | RECORDS ONLY |
| | ) | SUBPOENA |
| ARTHUR M. SEIGEL, M.D., | ) | |
| ARTHUR M. SEIGEL, M.D., P.C., | ) | |
| and ELLEN SEIGEL, | ) | |
|     Defendants. | ) | MARCH 24, 2005 |

## THE HARTFORD FINANCIAL GROUP, INC.'S
## OBJECTIONS TO PLAINTIFFS' SUBPOENAS DUCES TECUM

Non-party, The Hartford Financial Services Group, Inc. ("HFSG"), hereby objects to

the document production requests set forth in the Subpoenas Duces Tecum (the "SDT") served

upon HFSG on or about February 9, 2005[1] as follows:

### GENERAL OBJECTIONS

1.    HFSG's general objections are incorporated into each of its specific objections

and are merely designed to avoid unnecessary duplication and repetition within those specific

objections.

2.    HFSG objects to each and every production request to the extent that it seeks to

impose a greater burden and obligation to respond than is required by the Federal Rules of

Civil Procedure, any applicable Local Rules of Civil Procedure and/or any other applicable

law.

---

[1] Although the SDT initially called for compliance by February 25, 2005, Plaintiffs agreed to allow HFSG until
March 25, 2005, which is a legal holiday, to respond so that it could adequately investigate the issues raised by the
SDT.

3.      HFSG objects to each and every production request to the extent that it purports to require HFSG to obtain information from third parties and to obtain and produce documents that are not within the possession, custody or control of HFSG.  HFSG notes specifically that, upon information and belief, it sent its primary investigation file concerning Dr. Seigel's fraudulent billing practices to the FBI in connection with the United States criminal prosecution of Dr. Seigel.  HFSG did not retain a copy of that file.

4.      HFSG objects to each and every production request to the extent that it seeks or can be construed to seek information that is protected from discovery under applicable law, whether pursuant to the attorney-client privilege, the work product doctrine or other privilege or immunity.  Documents containing such information shall not be produced.  Any document so withheld will be appropriately listed in a privilege log in accordance with applicable law.  In the event that any document containing such information is produced, such action is inadvertent and does not constitute a waiver of such privilege or immunity.

5.      HFSG objects to each and every production request to the extent that it seeks the disclosure of confidential, proprietary and/or trade secret documents.  Such documents will be disclosed, if at all, only pursuant to an appropriate protective order governing this action and protecting the confidential nature of those documents.

## SPECIFIC OBJECTIONS

### Document Requests

1.      Any and all statements and documents, regardless of the media used to memorialize or store such information, regarding and/or obtained from Dr. Arthur M. Seigel's former patients who reported that they did not receive needle electromyography testing ("Needle EMG") (CPT Code 95860) from Dr. Arthur M. Seigel in connection with cases in which Dr. Seigel and/or Arthur M. Seigel, M.D., P.C. issued invoices demanding payment for Needle EMG testing.

2

**OBJECTION:**      HFSG objects to this request for multiple reasons. First, this request seeks documents prepared in anticipation of litigation and those documents are therefore protected by the attorney work product immunity doctrine. By way of background, HFSG first learned in approximately 1997 that Dr. Seigel, a New Haven, Connecticut based neurologist, was apparently billing for Needle EMG Testing that he had not actually performed. At that time, HFSG began conducting an investigation to determine whether its underwriting companies had paid claims for Needle EMG Testing submitted by Dr. Seigel for testing that he did not actually perform. This investigation was performed with the involvement of HFSG's internal lawyers. Portions of the investigation were performed by an outside law firm. This investigation was performed in part in anticipation of pursuing litigation against Dr. Seigel for the recovery of amounts advanced concerning fraudulent billing for Needle EMG Testing.

Second, this request seeks information that is protected by state and federal privacy laws. The responsive documents that HSFG possesses include documents containing: (a) personal and/or privileged information concerning individuals and/or received in connection with insurance transactions; (b) individually identifiable health information; and/or (c) non-public personal information provided to HFSG, which is a financial institution. This information may include without limitation: (a) individual's names; (b) birth dates; (c) social security numbers; (d) medical conditions; and (d) treatment and billing for medical conditions. Disclosure of such information is precluded by the Gramm-Leach-Bliley Act (15 U.S.C. § 6802) and/or the Connecticut Insurance Information and Privacy Protection Act ("CIIPPA"; Conn. Gen. Stat. § 38a-988).

Third, this request seeks documents that HFSG maintains as confidential and proprietary business documents. Therefore, if HFSG is required to produce documents in response to this request, HFSG requests that the Court enter a protective order maintaining the confidential and proprietary nature of those documents.

Fourth, this request is not reasonably calculated to lead to the discovery of admissible evidence and seeks documents that have no relevance to this action. Specifically, HFSG is not a party in this action. Further, Plaintiffs have no legal right to recover damages based upon money advanced by HFSG's underwriting companies to Dr. Seigel.

Fifth, this request is vague and ambiguous. It is not clear whether this request, as worded, only requests documents concerning reports made by

Dr. Seigel's former patients or whether it seeks all documents concerning Dr. Seigel's patients who reported that they did not receive Needle EMG Testing from Dr. Seigel. HFSG presumes that Plaintiffs intended the former interpretation because the latter interpretation is overly broad and unduly burdensome. In this regard, the latter interpretation would require HFSG to produce insurance policies, claims files unrelated to Dr. Seigel and various underwriting materials that have no connection to this action.

2.    Any and all non-privileged documents relating to The Hartford Financial Services Group, Inc.'s investigation of Dr. Arthur M. Seigel's medical billing practices pertaining to the alleged provision of Needle EMG testing and Nerve Conduction testing during 1996-present, and including, but not limited to, Seigel patient statements, transcripts, witness statements, claimant files and records, photographs, videotapes, medical records and invoices, investigative reports, damage calculations and FBI materials, regardless of the media used to memorialize or store such information.

**OBJECTION:**    HFSG objects to this request for multiple reasons. First, this request seeks documents prepared in anticipation of litigation and those documents are therefore protected by the attorney work product immunity doctrine. By way of background, HFSG first learned in approximately 1997 that Dr. Seigel, a New Haven, Connecticut based neurologist, was apparently billing for Needle EMG Testing that he had not actually performed. At that time, HFSG began conducting an investigation to determine whether its underwriting companies had paid claims for Needle EMG Testing submitted by Dr. Seigel for testing that he did not actually perform. This investigation was performed with the involvement of HFSG's internal lawyers. Portions of the investigation were performed by an outside law firm. This investigation was performed in part in anticipation of pursuing litigation against Dr. Seigel for the recovery of amounts advanced concerning fraudulent billing for Needle EMG Testing.

Second, many of the documents responsive to this request are communications between either HFSG attorneys or outside attorneys, and other HFSG employees. Such communications are protected by the attorney-client privilege and will be noted on an appropriate privilege log.

Third, this request seeks information that is protected by state and federal privacy laws. The responsive documents that HSFG possesses include documents containing: (a) personal and/or privileged information concerning individuals and/or received in connection with insurance

4

transactions; (b) individually identifiable health information; and/or (c) non-public personal information provided to HFSG, which is a financial institution. This information may include without limitation: (a) individual's names; (b) birth dates; (c) social security numbers; (d) medical conditions; and (d) treatment and billing for medical conditions. Disclosure of such information is precluded by the Gramm-Leach-Bliley Act (15 U.S.C. § 6802) and/or the Connecticut Insurance Information and Privacy Protection Act ("CIIPPA"; Conn. Gen. Stat. § 38a-988).

Fourth, this request seeks documents that HFSG maintains as confidential and proprietary business documents. Therefore, if HFSG is required to produce documents in response to this request, HFSG requests that the Court enter a protective order maintaining the confidential and proprietary nature of those documents.

Fifth, this request is not reasonably calculated to lead to the discovery of admissible evidence and seeks documents that have no relevance to this action. Specifically, HFSG is not a party in this action. Further, Plaintiffs have no legal right to recover damages based upon money advanced by HFSG's underwriting companies to Dr. Seigel.

Sixth, this request is vague and ambiguous in that it fails to define the term "investigation" and is therefore subject to multiple interpretations. HFSG will interpret this term in a manner that it considers reasonable.

3.    Any and all documents referred to or relied upon in preparing and/or filed in support of The Hartford Financial Services Group, Inc.'s victim impact statement submitted in connection with the matter of United States of America vs. Arthur M. Seigel, Criminal Docket Number 3:01CR274, including but not limited to Seigel patient statements, transcripts, witness statements, claimant files and records, photographs, videotapes, medical records and invoices, investigative reports, damage calculations and FBI materials, regardless of the media used to memorialize or store such information.

**OBJECTION:**    HFSG objects to this request for multiple reasons. First, this request seeks documents prepared in anticipation of litigation and those documents are therefore protected by the attorney work product immunity doctrine. By way of background, HFSG first learned in approximately 1997 that Dr. Seigel, a New Haven, Connecticut based neurologist, was apparently billing for Needle EMG Testing that he had not actually performed. At that time, HFSG began conducting an investigation to determine whether its underwriting companies had paid claims for Needle EMG Testing submitted by Dr. Seigel for testing that he did not actually perform. This investigation was performed with the

5

involvement of HFSG's internal lawyers. Portions of the investigation were performed by an outside law firm. This investigation was performed in part in anticipation of pursuing litigation against Dr. Seigel for the recovery of amounts advanced concerning fraudulent billing for Needle EMG Testing.

Second, many of the documents responsive to this request are communications between HFSG attorneys and outside attorneys, and other HFSG employees. Such communications are protected by the attorney-client privilege and will be noted on an appropriate privilege log.

Third, this request seeks information that is protected by state and federal privacy laws. The responsive documents that HSFG possesses include documents containing: (a) personal and/or privileged information concerning individuals and/or received in connection with insurance transactions; (b) individually identifiable health information; and/or (c) non-public personal information provided to HFSG, which is a financial institution. This information may include without limitation: (a) individual's names; (b) birth dates; (c) social security numbers; (d) medical conditions; and (d) treatment and billing for medical conditions. Disclosure of such information is precluded by the Gramm-Leach-Bliley Act (15 U.S.C. § 6802) and/or the Connecticut Insurance Information and Privacy Protection Act ("CIIPPA"; Conn. Gen. Stat. § 38a-988).

Fourth, this request seeks documents that HFSG maintains as confidential and proprietary business documents. Therefore, if HFSG is required to produce documents in response to this request, HFSG requests that the Court enter a protective order maintaining the confidential and proprietary nature of those documents.

Fifth, this request is not reasonably calculated to lead to the discovery of admissible evidence and seeks documents that have no relevance to this action. Specifically, HFSG is not a party in this action. Further, Plaintiffs have no legal right to recover damages based upon money advanced by HFSG's underwriting companies to Dr. Seigel.

6

NON-PARTY,
THE HARTFORD FINANCIAL
SERVICES GROUP, INC.


By_____
     Jason M. Price
     Federal Bar No. 20126
     Shipman & Goodwin LLP
     One Constitution Plaza
     Hartford, CT 06103-1919
     Tel:  (860) 251-5000
     Fax:  (860) 251-5218
     E-mail:  jprice@goodwin.com

## CERTIFICATION OF SERVICE

I hereby certify that a copy of the foregoing was mailed, via U.S. mail, postage prepaid, this 24th day of March, 2005, to:

Richard D. King, Jr., Esq.
Smith & Brink, P.C.
122 Quincy Shore Drive
2nd Floor
Quincy, MA 02171

Joel Rottner, Esq.
Skelley Rottner, P.C.
P.O. Box 340890
Hartford, CT 06134

Jason M. Price

397661 v.02 S1

8