UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

C. A. NO. 303 CV 0577 MRK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY and ALLSTATE INDEMNITY COMPANY<br>    Plaintiffs, | )<br>)<br>)<br>) |
| v. | )<br>) |
| ARTHUR M. SEIGEL, M.D.,<br>ARTHUR M. SEIGEL, M.D., P.C.<br>and ELLEN SEIGEL,<br>    Defendants. | )<br>)<br>)<br>) SEPTEMBER 30, 2005 |

**DEFENDANTS' LOCAL RULE 56(a)(1) STATEMENT**

1. On May 22, 2002, Dr. Arthur M. Seigel pled guilty to a single count of Mail fraud (18 U.S.C. § 1341) related to allegations that he had billed patients and insurance companies for Needle EMG tests that were never performed. [Ex. B]

2. The Plea Agreement was signed on November 20, 2001. [Id.].

3. In it, Dr. Seigel admitted that of the more than 7000 Needle EMG tests he billed for between 1996 and 2000, "many" of the billings were fraudulent. [Id. p. 8]

4. There was no agreement as to a specific number, nor is the Plea Agreement particular to any specific insurer. Dr. Seigel was not charged with, nor was he alleged to have committed, fraud related to anything other than Needle EMG testing. [Id.].

5. The plea agreement specified that Dr. Seigel was to make payment of $450,000 in restitution to insurance providers. [Ex. B p. 2].

6. That number represented the "fraud loss," or a "reasonable approximation of the value of the monies" he obtained by fraud. [Id. pp. 3, 9].

7. Nineteen separate insurers made restitution claims against Dr. Seigel. [Ex. C p. 7].

8. Among them, Allstate received $62,772.15, or 13.95% of the restitution award. [Id.].

9.  Dr. Seigel took no part in the determination of that figure, and made no admission related to Allstate's restitution claim. [Ex. D ¶¶ 3-5].

10. According to the affidavit of Michael Bruno, an analyst for Allstate's Special Investigations Unit, Allstate made attempts to contact former Seigel patients for whom Dr. Seigel generated Needle EMG bills to ascertain whether they in fact received needle EMG testing. [Ex. A to Plaintiff's Motion for Partial Summary Judgment, Docket No. 64 at ¶9].

11. <u>A few</u> of these former patients executed affidavits indicating that they did not. [<u>Id</u>.].

12. Allstate has twenty five such affidavits. [<u>Id</u>. tabs 1-25].

13. Each is virtually the same, averring that the patient at issue treated with Dr. Seigel and at no time did he insert a needle under the patient's skin. Neither Michael Bruno's affidavit, nor any of the 25 patient affidavits raise issues of Nerve Conduction Fraud,[1] Pattern Diagnosis Fraud, or Misleading Diagnosis Fraud. Indeed, Mr. Bruno's affidavit refers to these exemplar patients as "Needle Affiants," underscoring the lack of connection to the fraud described in the latter three categories. [<u>Id</u>. ¶ 9].

14. Allstate also deposed of thirty former Seigel patients whose claims it paid. Each of those deponents testified either that Dr. Seigel did not pierce his or her skin with a needle, or that he or she had no memory of Dr. Seigel piercing his or her skin. [Ex. G].

15. Eleven of the former patients who provided affidavits were also deposed, making the total number of former patients providing evidence that a Needle EMG exam was billed for but not performed to forty-four (44). To date, these depositions and affidavits are the only specific evidence of fraud as to any of the 197 claimants upon whom Allstate bases its damage claim. [Ex. G and Ex. A to Plaintiff's Motion for Partial Summary Judgment, Docket No. 64].

16. As detailed above, Dr. Seigel pled guilty to a single count of Mail Fraud (18 U.S.C. § 1341) on May 22, 2002. [Ex. C].

17. The Plea Agreement was signed on November 20, 2001. [Ex. B], and contains an admission that, of the over 7000 Needle EMG tests for which Dr. Seigel billed between 1996 and 2000, "many" were fraudulent. [Ex. B p. 8].

18. The "many" includes bills for which many different insurance carriers eventually became responsible, nineteen of whom submitted claims for restitution. Notably, the Plea Agreement contained no admission related to Allstate or any other

---

[1] Nerve conduction testing does not involve the subcutaneous insertion of a needle.

individual insurer. Nor does it reference any allegation of fraud other than that related to Needle EMG testing. [Ex. B, C].

19. The plea agreement specified that Dr. Seigel was to make payment of $450,000 in restitution to insurance providers. [Ex. B p. 2].

20. That number represented the "fraud loss," or a "reasonable approximation of the value of the monies" he obtained by fraud from all patients and insurance companies who paid. [Id. p. 3, 9].

21. Nineteen separate insurers made restitution claims against Dr. Seigel. [Ex. C p. 7].

22. Among them, Allstate received $62,772.15, or 13.95% of the restitution award. The latter figure, however, was determined between Allstate, the government, and the remaining eighteen insurance companies. Dr. Seigel took no part in its determination. [Ex. D ¶¶ 3-5].

23. Defendants' discovery responses are largely in line with what is detailed in the Plea Agreement and Stipulation of Offense. Dr. Seigel admits that "many" of the 7000 EMG procedures for which he billed from December 1996 through August 2000 were fraudulent [Ex. H Request No. 17]; that he intentionally engaged in a scheme to defraud insurance carriers by creating false medical documentation [Ex. H Request No. 56]; and that the objective of the scheme was "to be paid improperly, in a very small percentage of cases for needle EMG's not performed." [Ex. I Response No. 1(f)].

24. Dr. Seigel's discovery responses contain no admission related to alleged Nerve Conduction Fraud, Misleading Diagnosis Fraud, and Pattern Diagnosis Fraud. [Ex. H, I, J].

25. In the attached Affidavit, [Ex. D], Dr. Seigel states, among other things, that only a small percentage of the Needle EMG tests he in fact billed for were not performed. [Id. at ¶ 6].

26. He further states that any patient who needed a Needle EMG test received one, and the small percentage of false bills arose only in cases where the patient at issue clearly did not need a Needle EMG test. [Id. at ¶ 7].

27. Any needle EMG record in which there were positive findings was in fact performed. [Id. at ¶ 8].

28. Dr. Seigel further denies ever billing for nerve conduction studies that were not performed. [Id. at ¶ 8].

3

28. Dr. Seigel further denies ever billing for nerve conduction studies that were not performed. [Id. at ¶ 8].

29. When conducting nerve conduction studies, it was his practice to record amplitude measurements only when findings were positive. Since amplitude is irrelevant to a clinically insignificant finding, those measurements were not recorded in every case. This practice is common among medical professionals and entirely appropriate. [Id. at ¶ 10].

30. a Dr. Seigel further denies ever artificially inflating a patient's medical injuries in a report, or other wise writing reports that were misleading or intentionally inaccurate. [Id. ¶ 11].

31. Finally, he denies creating false reports by making "pattern diagnoses" without regard to a patient's signs and symptoms. The patients he saw at his practice tended to have similar injuries because similar incidence gave rise to their need for medical attention. It is common and entirely appropriate for medical professionals to use similar language to describe similar injuries. [Id. at ¶12].

THE DEFENDANTS
ARTHUR M. SEIGEL, M.D.; ARTHUR M. SEIGEL, P.C.; ELLEN SEIGEL

By _____
Ira B. Grudberg
David L. Belt
Joshua D. Lanning (ct24529)
JACOBS, GRUDBERG, BELT, DOW & KATZ, P.C.
350 Orange Street
New Haven, Connecticut 06503
Telephone No. (203) 772-3100
Facsimile No. (203) 772-1691
email: jlanning@jacobslaw.com

4

## CERTIFICATION

I hereby certify that the foregoing has been served by placing a copy thereof in the United States mail, first class postage prepaid, this 30th day of September, 2005, addressed to:

Joel Rottner, Esq.
Skelley Rottner, P.C.
P.O. Box 340890
Hartford, CT 06134-0890

David O. Brink, Esq.
Richard D. King, Jr., Esq.
Nathan A. Tilden, Esq.
Smith & Brink, P.C.
122 Quincy Shore Drive, 2nd Floor
Quincy, MA  02171

_____
Ira B. Grudberg