UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

C. A. NO. 303 CV 0577 MRK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY and ALLSTATE INDEMNITY COMPANY<br>    Plaintiffs,<br><br>v.<br><br>ARTHUR M. SEIGEL, M.D.,<br>ARTHUR M. SEIGEL, M.D., P.C.,<br>and ELLEN SEIGEL,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>   November 10, 2005 |

**PLAINTIFFS' LOCAL RULE 56(a)(2) STATEMENT**

I.  RESPONSE TO DEFENDANTS' 56(a)(1) STATEMENT:

    1.    Admitted.

    2.    Admitted.

    3.    Admitted.

    4.    Admitted.

    5.    Admitted.

    6.    Admitted.

    7.    Admitted.

    8.    Admitted.

    9.    Denied. Dr. Seigel agreed that the fraud loss figure of $450,000.00 constituted a "reasonable approximation of the value of the monies" Dr. Seigel obtained by fraud in connection with Needle EMG testing that was never performed. Deposition of Arthur M. Seigel, page 318-321 filed herewith at Exhibit 1.

    10.    Admitted.

    11.    Admitted insofar as former Seigel patients executed affidavits indicating that they did not receive testing for which Dr. Seigel sought payment.

12. Admitted.

13. Admitted insofar as the affidavits executed by Dr. Seigel's former patients indicate that Dr. Seigel did not perform the test (i.e., he did not insert a needle under the patient's skin) despite issuing medical records and invoices documenting that such tests had been completed. Allstate denies the balance of all other irrelevant, collateral and argumentative matter attempted to be asserted in defendants' Rule 56(a)(1) Statement.

14. Admitted.

15. Denied. Affidavit of Neil Amdur Busis, M.D. filed herewith as Exhibit 2; Expert Report of Neil Amdur Busis M.D. Pursuant to Fed. R. Civ. P. 26(2) filed herewith as Exhibit 3.

16. Admitted – see 1 above.

17. Admitted – see 1-3 above.

18. Admitted.

19. Admitted – see 5 above.

20. Admitted – see 6 above.

21. Admitted – see 7 above.

22. Admitted – see 8 and 9 above.

23. Denied. Dr. Seigel's discovery responses speak for themselves. Exhibit 1 at 318-321. Arthur Seigel's ("AMS") Answers to Interrogatories, filed herewith as Exhibit 4, AMS Response to Admissions, filed herewith as Exhibit 5, Seigel P.C. Answers to Interrogatories, filed herewith as Exhibit 6.

24. Denied. Dr. Seigel's discovery responses speak for themselves. Importantly, Dr. Seigel's discovery responses (including discovery conducted pursuant to Rules 30, 33-34 and 36) all contain admissions that he created and advanced false medical documentation in violation of state and federal law for which Allstate seeks damages. Exhibits 1 at 245-246, 320-321, 324-325, 329, 333, 338, 345-347. 431-434, 467, 583, 607, 673, 676; 2 at ¶¶ 15-18, 25-26, 38, 45-46; 3 at 5-8; 4 at No. 1-3; 5 at No. 17-20, 22, 24-25, 28, 32, 34-35, 38, 41-44, 56; 6 at No. 4-6, 8, 12; 7 at 35, 45-48, 55-61, 71-72, 75-78, 83-85.

25. Admitted insofar as Dr. Seigel's affidavit speaks for itself. However, Dr. Seigel's self-serving characterization that his criminal conduct effected only a "small percentage" of his Needle EMG medical documentation is inconsistent with his

oral deposition testimony in which he acknowledged that he billed falsely on 40+% of all cases during the relevant period. Exhibit 1 at 318-320.

26. Admitted insofar as Dr. Seigel's affidavit speaks for itself and contains multiple self-serving assertions. However, the testimony of Allstate's expert makes clear that it would not have been possible for Dr. Seigel to predetermine the "necessity" of conducting the Needle EMG test until the test had actually been performed. Seigel Sentencing Hearing Transcript, May 21-22, 2002 at 45-48 filed herewith as Exhibit 7.

27. Denied. Contrary to defendants' assertion at ¶ 27, Dr. Seigel acknowledged that certain so-called "positive findings" could have resulted from Needle EMG tests that were not actually performed. In the case of a patient's medical records containing the "positive finding" of "spontaneous motor units at rest", such a finding is consistent with testing that is not actually performed – i.e., needles never inserted subcutaneously into the patient's muscle. Exhibit 1 at 441-442.

28. Admitted insofar as Dr. Seigel continues to deny his involvement in nerve conduction testing fraud.

29. Denied with respect to each assertion contained in ¶ 29. Exhibits 2 at ¶¶ 45-46; 3 at 6-7.

30. Denied. Contrary to the assertion at ¶ 30, Dr. Seigel has routinely acknowledged creating and submitting reports that were misleading and intentionally inaccurate. For instance, it is beyond any reasonable debate that every medical record and corresponding invoice containing charges and/or medical narrative reference to Needle EMG testing and/or the result therefrom or the conclusions to be drawn as a result thereof, were misleading when such tests were not performed. Exhibit 1 at 245-246. Further, Allstate has never alleged that Dr. Seigel "artificially inflated" a patient's injury. To the contrary, Allstate's expert review of the medical records indicates the vast majority of patients seen by Dr. Seigel had extremely minor injuries (if any at all). Allstate has alleged that Dr. Seigel's involvement artificially inflated the settlement value of claims in which he allegedly administered electrodiagnostic testing. Exhibits 14 at 8-10; 15 at 3-4.

31. Admitted insofar as Dr. Seigel continues to deny his involvement in all but 44 cases for Needle EMG testing performed. Moreover, the defendants continue to misconstrue the nature of Allstate's claims in connection with the so-called "Pattern Diagnosis" Fraud. As explained in its Opposition Memorandum filed herewith, Allstate's Pattern Diagnoses Fraud is not simply the result of administering similar treatment to a patient complaining of similar injuries. Rather, as explained in Allstate's Complaint and legal memoranda filed thereafter, Pattern Diagnosis Fraud essentially are those claims that exhibit the identical testing and medical billing patterns as the claims designated as "Misleading Diagnosis Fraud". Exhibits 2 at ¶¶ 15-18, 25-26, 38, 45-46; 3 at 5-8.

II. <u>DISPUTED MATERIAL FACTS</u>:

1. Defendants, Dr. Seigel and Arthur M. Seigel, MD., P.C. (hereinafter collectively referred to as "fraud defendants") created and advanced false medical documentation. Exhibits 1 at 320-321, 324-325, 329, 333, 338, 345-347. 431-434, 467, 583, 607, 673, 676; 2 at ¶¶ 15-18, 25-26, 38, 45-46; 3 at 5-8; 4 at No. 1-3; 5 at No. 17-20, 22, 24-25, 28, 32, 34-35, 38, 41-44, 56; 6 at No. 4-6, 8, 12; 7 at 35, 45-48, 55-61, 71-72, 75-78, 83-85.

2. The fraud defendants committed NCS fraud in connection with the NCS Fraud patients identified in Allstate's Complaint. Exhibits 2 ¶¶ 15, 36-37, 45-46; 3 at 5-8.

3. Failure to measure and/or record amplitude renders a NCS test incomplete as a matter of fact and for billing purposes. <u>Id.</u>; Exhibit 7 at 35.

4. Medical records that refer and/or purport to rely upon testing that was not performed are incomplete and misleading. Exhibits 2 ¶¶ 16-17, 26, 46; 3 at 5-8; 7 at 72-82.

5. The fraud defendants committed fraud in connection with those patients identified in Allstate's Misleading Diagnosis Fraud section of Allstate's Complaint. <u>Id.</u>

6. The fraud defendants committed fraud in connection with those patients identified in the Pattern Diagnosis Fraud section of Allstate's Complaint. <u>Id.</u>

7. Ellen Seigel intentionally sought payment in connection with Seigel, P.C. invoices she knew contained or may contain false and fraudulent charges. Exhibits 8 at 63-68, 73-74, 82, 127-130; 9 at 32-33, 71-73; 10 at No. 9; 11 at No. 13, 24, 25, 27.

8. Dr. Seigel's' involvement in third-party claims alleged in Allstate's Complaint artificially inflated the Allstate-determined settlement value. Exhibits 12 at ¶ 50-61; 13 at ¶ 15-16, 24-25; 14 at 9-10; 15 at 2-4.

9. The amplitude portion of an NCS test is a required component of a completed NCS test (together with latency and velocity). Exhibits 2 ¶¶ 16-17, 26, 46; 3 at 5-8; 7 at 72-82.

10. NCS testing is not predictive of the necessity for and/or results likely to be obtained via a Needle EMG test in the same patient. Exhibit 7 at 45-48.

11. It is not possible to conclude that a Needle EMG will be normal in a given patient without actually conducting the exam. Exhibits 1 at 652-657; 7 at 45-48.

12. So-called "positive findings" contained in connection with some of the Needle EMG records created by Dr. Seigel do not necessarily support a conclusion that the test was performed. In fact, cases where the "positive finding" is exhibited as "spontaneous motor units at rest" could have simply been the result of a surface EMG reading. Dr. Seigel has acknowledged that the finding "spontaneous motor units at rest" found throughout the medical evidence in the case at bar, is consistent with the fraudulent conduct in which he engaged in connection with those patients for whom false Needle EMG testing records were created and submitted for payment. Exhibit 1 at 441-442.

13. Dr. Seigel continued to create and submit false medical documentation in connection with Needle EMG tests that were not performed following the execution of the government's search warrant in August 2000. Exhibits 16-17.

14. Dr. Seigel continued to create and submit false medical documentation in connection with Needle EMG tests that were not performed after his guilt plea in November 2001. Exhibits 16-17.

15. Dr. Seigel created and submitted false medical documentation through the United States mail in connection with NCS fraud, Misleading Diagnosis Fraud, CPT Upcoding Fraud and Pattern Diagnosis Fraud. Exhibits 1 at 320-321, 324-325, 329, 333, 338, 345-347, 431-434, 467, 583, 607, 673, 676; 2 at ¶¶ 15-18, 25-26, 38, 45-46; 3 at 5-8; 4 at No. 1-3; 5 at No. 17-20, 22, 24-25, 28, 32, 34-35, 38, 41-44, 56; 6 at No. 4-6, 8, 12; 7 at 35, 45-48, 55-61, 71-72, 75-78, 83-85.

16. Allstate relied upon the medical documentation created and advanced by the fraud defendants in evaluating first and third-party claims. Exhibits 12 ¶¶ 21, 37-42, 51, 53-55, 58, 61; 13 at ¶¶ 13, 15-17, 23-25.

17. Allstate was harmed by defendants' conduct in connection with the alleged Needle EMG, NCS, Misleading Diagnosis, CPT Upcoding and Pattern Diagnosis claims. Id.

Respectfully submitted,
Allstate Insurance Company and
Allstate Indemnity Company
By their Attorneys,

_____
David O. Brink, Federal Bar No. CT23989
Richard D. King, Jr., Federal Bar No. CT23997
Nathan A. Tilden, Federal Bar No. CT24011
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, MA  02171
Tel.  (617) 770-2214

Dated: November 10, 2005