UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

C. A. NO. 303 CV 0577 MRK

ALLSTATE INSURANCE COMPANY and )
ALLSTATE INDEMNITY COMPANY )
    Plaintiffs, )
)
v. )
)
ARTHUR M. SEIGEL, M.D., )
ARTHUR M. SEIGEL, M.D., P.C., )
and ELLEN SEIGEL, )
    Defendants. )   November 10, 2005

**MEMORANDUM OF FACT AND LAW IN SUPPORT OF PLAINTIFFS'
MOTION TO STRIKE EXHIBIT A FILED IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**I.  INTRODUCTION**

Now come plaintiffs, Allstate Insurance Company and Allstate Indemnity Company (hereinafter collectively referred to as "Allstate") and submit the within memorandum in support of its Motion to Strike Exhibit A Filed in Support of Defendants' Motion for Summary Judgment.

**II.  SUMMARY OF MATERIALS CONTAINED WITHIN EXHIBIT A**

Exhibit A begins with a two paragraph commentary by defense counsel as follows:

> We *believe* plaintiffs have attempted to leverage a number of improper and false $140 charges for needle EMG testing which was not done into what plaintiffs put forth as a huge damages claim based on a so–called "Seigel effect." While there is little or no expert or other support for the number of other "frauds" listed in the Complaint, we *believe* a study of the Allstate claimant files making up the original 241 "fraud" claims is very instructive in terms of realization that, other than being a specialist, Seigel's

                                                                                       **Plaintiffs Request
Oral Argument**

> influence in the case is much less important than other factors, and sometimes negative.
>
> Rather than having a very lengthy portion of the Memorandum argument tied up with this, we have decided to list and file with the court, relevant portions of Allstate's "Seigel files", with sometimes ***argumentative*** comments on the backup material Exhibits.

(emphasis added).

Thereafter, defendants discuss 79 claims wherein they *opine* that factors other than the "Seigel Effect" impacted settlement values. These individual claimant commentaries contain inaccurate, misleading argument concerning hearsay documents. Such material is wholly inappropriate, non-rule 56 material—beyond the scope of consideration for the Court on defendants' Motion for Summary Judgment. A sampling of counsel's "folksy", *speculative* and **over-the-top** commentary is distilled below:

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---|---|---|---|
| A-2 | Hector Reyes | 11/23/96 | • Not sure what the **"real"** total on medical expenses was. |
| A-3 | Denilo Reyes | 2/18/00 | • Seigel's bill cut by only $50. |
| A-4 | Kironde Reid | 3/30/96 | • *Difficult from information we have* to tell exactly how much (aside from Seigel) the medical specials were lowered or disregarded. |
| A-5 | Arthur Kandziora | 7/18/98 | • *No effect* from diagnostic tests. |
| A-6 | Rodrigo Gonzales | 3/6/97 | • *No indication* of how much taken from Seigel's bill.<br>• Other diagnostic tools, *no effect*. |
| A-7 | Steven Schulze | 8/13/96 | • *Increased effect on value from other diagnostic tools.* |
| A-8 | Louis Serrano | 11/30/00 | • Colossus report points out the difference between subjective disability ratings and objective (usually zero). That sort of comment in almost all of the Colossus reports. |
| A-9 | Florence Ritchie | 10/17/96 | • Medicals *apparently* written down<br>• **A steal for Allstate.** |

2

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---|---|---|---|
| A-10 | Evelyn Rivera | 5/10/98 | • *No detail on what they did* with Seigel's bill. |
| A-11 | Michaela Robinson | 5/2/98 | • *No detail* concerning Seigel's bill. |
| A-12 | Jean Costa | 1/9/96 | • *Don't know* from what we have whether that was <u>written down</u> from a higher figure. |
| A-13 | Lucy Avila | 3/19/96 | • Settlement well above everyone's range.<br>• *Likely key*, as with many cases, lies with the insured. |
| A-14 | Theodora Tarquino | 8/25/95 | • Although this claim outside the damage calculation because accident before 1/1/96, **it does show plaintiff's disdain of Seigel as early as 1995.** |
| A-15 | Patricia Cain | 10/7/97 | • *Do not have much information on this one.* |
| A-16 | Joseph Duro |  | • *It would appear fairly clear that his being in the case had virtually nothing to do with the amount of the settlement.* |
| A-17 | Cathy Bowman | 4/29/97 | • Clearly it took significant corroboration to outweigh the **usual downgrading of** Seigel's reports and bills. |
| A-18 | Lester Frizzell | 4/18/97 | • *Don't know* how much was based on <u>knocking Seigel's bill down.</u><br>• Settled for approximately $3,000 more than the actual medical expenses, <u>barely enough for a fee.</u> |
| A-19 | Ilene Kaman | 3/2/97 | • *Don't know* how much they <u>knocked off</u> on Seigel's bill. |
| A-20 | Kenya Comfort | 2/9/97 | • **A total steal.**<br>• Can hardly say Seigel had any impact on this – except negative |
| A-21 | Charlotte Carney | 1/27/97 | • **They bought the continuing symptoms,** after a couple of years, and the opinion of Dr. Becker, known as being a conservative physician. |

3

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---------|---------------|-----------|----------------------|
| A-22 | Iris Frazier | 1/30/97 | • Allstate got an extremely favorable settlement based on Colossus comments.<br>• Again it is clear that (1) *bad things about the insured impact Allstate's thinking more than anything else.*<br>• In addition, they were forced to credit Seigel's reports and likely testimony, based on confirming complaints from all directions. |
| A-23 | Willie Holder | 12/6/96 | • **Although not in the group considered by Dr. Weisberg,** Allstate's handling is instructive.<br>• <u>On this one they took their chances</u>, but the handling was consistent with what we have seen. |
| A-27 | Travis Johnson | 5/17/98 | • The medicals probably after adjustment downward, *but don't know for sure* (sic). |
| A-28 | Randy Blackwell | 11/1/96 | • Settled for approximately one and one-half times medicals – **barely the fee.** |
| A-30 | Larry Frappier | 10/12/96 | • *Obvious the payment had little or nothing to do with the size of Seigel's bill or what he did or wrote.* |
| A-33 | Joseph Ocasio | 11/3/99 | • *They may possibly have overpaid a bit based on their $760 error on the bills incurred.*<br>• *Hard to figure*, from the file, why they paid $2,500 above the Colossus figure.<br>• *No explanation.* |
| A-36 | Maria Morantas | 3/26/96 | • The case was **clearly stolen**.<br>• The **lawyer or client must have had serious cash flow problems.**<br>• How can you ascribe 18% further off that settlement figure to Siegel. |
| A-38 | Melez Miraoui | 1/3/96 | • **Good settlement for Allstate.** |

4

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---------|---------------|-----------|------------------------|
| A-40 | Martha Melendez | 9/25/98 | • Apparently seen by Seigel after all treatment done.<br>• *Perhaps* he gave the rating.<br>• **While the author considers it anything but unusual, it is clear that Allstate consistently paid little or no attention to soft tissue permanent disability ratings.** |
| A-41 | Migdaly Centeno | 3/3/96 | • Settlement for not quite double the medicals bills incurred is <u>anything but a home run.</u> |
| A-42 | Barbara McCotter | 4/19/97 | • <u>Settlement just barely twice the medicals.</u> |
| A-45 | Veronica Little | 9/8/98 | • *I can't find it in this material, but the file indicates the actual medicals were $5,316, of which Allstate would not accept $1,550.*<br>• *Don't know how much of that was out of Seigel's bill, but obviously some.*<br>• Plaintiff's counsel apparently lowered his demand from $15,000 to $12,000 which did settle it.<br>• Rating was 5% of the cervical of the thoracical lumbar.<br>• **Allstate paid it no mind.**<br>• With $5,300 in medical bills and dual ratings, <u>**$12,000 settlement is certainly not a home run.**</u> |
| A-46 | Nancy Mahoney | 6/11/97 | • *Medicals $4,145. No adjustment noted on Colossus, but they must not have put it through MBRS yet.*<br>• **They always cut them down.**<br>• *As we have seen before, the persona of the insured, and also the plaintiff, drives these settlements as much as anything else, probably more.* |

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---|---|---|---|
| A-47 | Michael Orifice | 10/10/97 | <ul><li>Based on the size of the settlement, under Dr. Weisberg's averaging, $41,625 of the fee would be ascribable to a so-called "Seigel effect".</li><li>**That is idiotic.**</li><li>It is almost 10% of the entire damage "calculation".</li><li>First, it is *absolutely clear that Seigel did nothing wrong in this case.*</li><li>In a case where it is more than obvious that the injuries were most severe, required surgery, and ended up with a significant whole body disability, to say that almost $42,000 of the settlement somehow can be ascribable to some fraud by Dr. Seigel or the "Seigel effect" is absurd.[1]</li></ul> |
| A-48 | Daryl Fraser | 6/12/96 | <ul><li>*Don't know* how much they cut the medicals incurred, but they must have to some extent.</li></ul> |
| A-49 | Shannon Cady | 7/9/98 | <ul><li>*Doesn't talk about adjustment, but obviously there was.*</li><li>Obviously a nothing settlement and *Seigel certainly couldn't have done anything for her.*</li></ul> |
| A-50 | Craig Evans | 7/24/98 | <ul><li>They only cut Seigel's bill by about $60 as of 1999, but it appears clear, with almost $4,100 in medical bills on a $5,700 settlement, that **Allstate stole the thing and used Seigel's problems to do that.**</li></ul> |
| A-51 | Iris Bruno | 11/23/98 | <ul><li>The "Seigel effect" couldn't have added anything. *Probably subtracted.*</li></ul> |

---

[1] Notably, Michael Orifice is not part of the damage calculation performed by Drs. Weisberg and Erath. As defendants' counsel is well aware, all "major category" injuries were excluded from Allstate's statistical model. Mr. Orifice's injury was deemed major and excluded from the statistical model. Accordingly, defendants' commentary is irrelevant moot and clearly designed to cloud what is already a complex case, without counsel's desperate tactics.

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---|---|---|---|
| A-52 | Ruben Casiano | 2/22/99 | • With $5,000 in medicals and $360 in wages, the $6,000 **settlement again was a steal. No Seigel effect here.** |
| A-53 | Guy Burr | 7/17/99 | • $6,200, with $4,000 in medicals, **again is a steal. No Seigel effect here.** |
| A-54 | Jessimine Criscuolo | 8/2/95 | • Not one of the cases for Dr. Weisberg's damages, since it goes back to 1995. |
| A-56 | Heriberto Pagan | 2/5/96 | • Although settlement before the plea, was long after Allstate was meeting with a U.S. Attorney and after served with subpoena concerning Seigel records. |
| A-57 | James Palm | 9/7/96 | • *Clearly the Seigel effect had absolutely nothing to do with settlement.* |
| A-58 | Steve Benado | 10/25/96 | • Not a bad settlement under the circumstances for Allstate.<br>• Seen only once by Seigel.<br>• No disability evaluation.<br>• Little to do with settlement. |
| A-60 | Zulma Quiles | 9/30/97 | • With almost $6,000 in medicals expenses, $11,500 **settlement is very advantageous for Allstate.** |
| A-61 | Doristine Williams | 4/1/98 | • With $3,600 in special damages, including earnings, $7,500 **settlement a good deal for Allstate** |
| A-62 | Racheal White | 3/4/98 | • David Johnson, counsel. Real good lawyer.<br>• This, being a big settlement, although not as egregious as the $225,000 creates a crazy result.<br>• Based on Dr. Weisberg's numbers, the presence of Seigel would add more than $10,700 to the damages.<br>• **Totally unjustifiable.**[2] |

---

[2] Notably, Racheal White is not part of the damage calculation performed by Drs. Weisberg and Erath. As defendants' counsel is well aware, all "major category" injuries were excluded from Allstate's statistical model. Ms. White's injury was deemed major and excluded from the statistical model. Accordingly, defendants' commentary is irrelevant moot and clearly designed to cloud what is already a complex case, without counsel's desperate tactics.

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---|---|---|---|
| A-63 | Paul Ward | 7/23/96 | <ul><li>No specifics as to how much but *clearly must have marked Seigel down substantially*.</li><li>With almost $6,600 in medicals, **they stole this one.**</li></ul> |
| A-64 | Lester Walters | 12/31/96 | <ul><li>*Don't know* how much they knocked that down, but based on the overall reduction, probably by $500.</li><li>With almost $4,500 in medical bills, **very advantageous settlement for Allstate.**</li></ul> |
| A-65 | Thomas Volturno | 6/14/96 | <ul><li>Value clearly had much to do with impingements in the shoulder, <u>little to do with Seigel's sayso.</u></li></ul> |
| A-66 | Frank Urbani | 3/25/96 | <ul><li><u>Strange Case</u>.</li><li>Seigel's one consultation in the first months after the collision obviously had nothing to do with Allstate changing its position from a zero pay to what ended up being a $28,500 settlement.</li><li>Weisberg's statistical approach adds more than $5,000 in damages here in a situation where settlement obviously had nothing to do with Seigel.</li></ul> |
| A-67 | Daniel Teplitsky | 9/17/97 | <ul><li>Based on $4,758 in medicals, **Allstate did extremely well** at a $6,700 settlement.</li></ul> |
| A-68 | Heather Soloman | 7/3/01 | <ul><li>Obviously plaintiff's counsel didn't realize the cost of the insurance a setoff against the collateral sources paid. **At $4,500, they pretty much gave the case away.**</li></ul> |
| A-69 | Jose Socortiz | 7/20/97 | <ul><li>By the time of settlement, it was **obvious that "Seigel effect" was negative.**</li></ul> |

8

| Exhibit | Claimant Name | Date Loss | Quotes from Exhibit A |
|---|---|---|---|
| A-71 | Kirk Trauskauskas | 7/19/98 | • *Hard to figure out what happened*, but no indication that Seigel did anything between approximately '99 and '01. |
| A-72 | Efrain Villaneuva | 7/9/00 | • Looks like reasonable settlement for both sides, but obviously Allstate paid <u>no attention</u> to the disability ratings. |
| A-76 | Julio Vazquez | 12/30/97 | • Seigel's billings were about 6% of all the medicals.<br>• *Hard to know* what impact if any he had on this settlement. |
| A-77 | Elizabeth Trojanoski | 8/26/99 | • ***This is a total mystery.*** |
| A-78 | Michael Tracy | 5/22/97 | • *File did not give an awful lot of information.*<br>• With that kind of medicals, **they totally stole this one.** |
| A-79 | Anna Gonzalez | 2/9/98 | • [W]ith no detail as to what was taken off Seigel's bill. *Obviously must have been something.*<br>• Not bad for either side. |
| A-80 | Additional Documents Showing Discounted Seigel Bills | | • In addition to the many, many discounting documents in portions of Allstate files set forth as exhibits above, there were many others which we could not speak sensibly about the settlement–but did have documentation knocking down Seigel's charges. |

(Emphases added.)

Clearly, the conclusory rhetoric highlighted above is not probative of the issues purportedly raised in defendants' ill-advised Rule 56 motion. None of counsel's irrelevant ramblings are supported by the Rule 56 record, and therefore are not properly before this Court. Accordingly, this Court should strike Exhibit A, in its entirety.

III. **LEGAL ANALYSIS**

"A motion to strike asks the court to remove from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The federal rules designate as "pleadings" those filings as set forth in Rule 7(a): a complaint, an answer, a reply to a counter claim, an answer to a cross-claim, a third-party complaint, a third party answer, and a reply to an answer or third party answer if ordered by the court. Fed. R. Civ. P. 7(a). Written exhibits to pleadings are made a part thereof, Fed. R. Civ.P. 10(c).

Whereas defendants' Exhibit A is merely made an exhibit to the defendants' brief in support of their Motion for Summary Judgment, it is not made part of a "pleading" by rule 10(c). It is, nevertheless, necessary to determine what material may be considered in ruling on defendants' motion for partial summary judgment. A motion to strike has sometimes been used to call the court's attention questions about the admissibility of proffered material in similar circumstances. See, e.g., Wimberly v. Clark Controller Co., 364 F.2d 225 (6th Cir. 1966); Steven v. Roscoe Turner Aeronautical Corp., 324 F.2d 157 (7th Cir. 1963); Superior Beverage Co. v. Ohio, 324 F. Supp. 564 (N.D. Ohio 1971); Monroe v. Bd. of Ed., 65 F.R.D. 641, 645 (D. Conn. 1975).

Exhibit A should be stricken from the record whereas it does not constitute competent Rule 56 material. Rule 56, Fed. R. Civ. P. provides, in pertinent part, as follows:

> The judgments sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

The contents of Exhibit A, including the two-page commentary in addition to tabs A-1 through A-80, contain miscellaneous documents including Colossus Assessment Reports, Explanation of Medical Bill Payment sheets, and claim note records regarding former Seigel patients. None of the documents comprising Exhibit A are sworn. Nor do any documents contained within Exhibit A constitute pleadings, depositions, answers to interrogatories, admissions, or affidavits. Fed. R. Civ. P. 56. Simply put, Exhibit A constitutes inadmissible hearsay.

Pursuant to Rule 802, Fed. R. Evid., hearsay is inadmissible. Hearsay is defined as "a statement other than one made by the declarant while testifying at a trial or hearing, offered into evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). A hearsay assertion is not a proper response to a summary judgment motion because it would be inadmissible at trial. Evans v. Continental Ins. Co., 1998 U.S. App. LEXIS 29423, *4 (2d Cir. November, 17 1998). Moreover, the defendants have made no attempt to qualify such documents as admissible business records. Fed. R. Evid. 803(6).

The business record exception to the hearsay rule, Fed. R. Evid. 803(6), provides as follows:

> Records of Regularly Conducted Activity
>
> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualifying witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this

> paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Rule 803(6) Fed. R. Evid., requires a finding that the documents in question were kept in the course of a regularly conducted business activity and that it was the regular practice of the business to make such records. Fagiola v. National Gypsum, Co. AC&S., Inc., 906 F.2d 53, 59 (2d Cir. 1990). Rule 803(6) allows business records to be admitted "if witnesses testify that the records are integrated into a company's records and are relied upon in its day-to-day operations." Matter of Ollag Construction Equip. Corp., 665 F.2d 43, 46 (2d Cir. 1981). The six inches of documents defendants produced as Exhibit A is not appropriate for consideration in the Rule 56 context.

The defendants appeared before this Court on May 19, 2005, in connection with Allstate's Motion for Partial Summary Judgment. At that time the Court granted defendants leave to conduct the depositions of Michael Bruno (person most knowledgeable designee of Allstate) and Allstate's expert statisticians, Herbert Weisberg, Ph.D and Christopher Erath, Ph.D. The defendants also sought and were granted an extension to file a motion for summary judgment. Despite this Court's warning against filing a frivolous motion for summary judgment, defendants defiantly indicated that a motion of summary judgment would be forthcoming. Notwithstanding the foregoing, defendants have made no attempt to properly qualify for Rule 56 consideration any of the documents that comprise Exhibit A. As a result, none of the documents attached to Exhibit A (including but not limited to the commentaries and miscellaneous documents) constitute Rule 56 materials appropriate for consideration by this Court. Accordingly, Exhibit A should be stricken from defendant's motion for summary judgment package.

IV.  **CONCLUSION**

Based upon the foregoing, Allstate respectfully requests that this Court strike Exhibit A in its entirety, whereas the material contained therein does not constitute appropriate Rule 56 material.

                    Respectfully Submitted,
                    *Allstate Insurance Company and*
                    *Allstate Indemnity Company,*
                    By their Attorneys,

David O. Brink
Federal Bar No. CT23989
Richard D. King, Jr.
Federal Bar No. CT23997
Nathan A. Tilden
Federal Bar No. CT24011
Smith & Brink, P.C.
122 Quincy Shore Drive
Quincy, MA  02171
Tel.  (617) 770-2214

Dated:  November 10, 2005